**EXHIBIT**

**3**

IN THE _____ COURT

**EL PASO COUNTY TEXAS**

| | | |
|---|---|---|
| **DORIS DAVIS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. _____** |
| **EL PASO COUNTY, EL PASO MHMR** | § | |
| **d/b/a EMERGENCE HEALTH** | § | |
| **NETWORK;** | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW, DORIS DAVIS, (herein, "Plaintiff"), in the above-styled and numbered cause, and files her Original Petition complaining of Defendant EL PASO COUNTY (herein "Defendant" and/or "EPCounty"), EL PASO MHMR D/B/A EMERGENCE HEALTH NETWORK (herein "MHMR" and/or "EHN" and/or "Defendant"). Plaintiff and Defendants herein will be referred to as the "Parties." Plaintiff for cause shows the Court the following:

### A. NATURE OF ACTION & DISCOVERY CONTROL PLAN

1. This action is brought to remedy discrimination, retaliation, and termination against PLAINTIFF by DEFENDANTS during the course of Plaintiff's employment with DEFENDANT EL PASO COUNTY, TEXAS via EL PASO MHMR d/b/a EMERGENCE HEALTH NETWORK (herein "MHMR" and/or "EHN"). Plaintiff's discrimination claims are raised on the basis of SEX (GENDER/FEMALE), AGE (over the age of 40), ASSOCIATIONAL DISABILITY Discrimination, FMLA RETALIATION AND RETALIATION in the terms, conditions, and privileges of PLAINTIFF'S employment escalating to Plaintiff's termination as retaliation for

Copy from re:SearchTX

opposing such discrimination, which is illegal per the Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEX. LAB. CODE ANN. § 21.001, *et seq.*, which Act's purpose is to secure to those within the state freedom from discrimination and retaliation in employment.

2.   Plaintiff DORIS DAVIS is a resident of El Paso County, Texas, and a prior employee of EL PASO COUNTY, specifically the EL PASO COUNTY MHMR DEPARTMENT d/b/a EMERGENCE HEALTH NETWORK.

3.   Plaintiff wishes to conduct discovery under Level 2, provided in Rule 190.3 of the Texas Rules of Civil Procedure.

## B. PARTIES

4.   Plaintiff DORIS DAVIS (herein "PLAINTIFF" and/or "MS. DAVIS") is a resident of El Paso County, Texas, and a prior employee of Defendant EL PASO COUNTY, specifically the EL PASO COUNTY MHMR DEPARTMENT d/b/a EMERGENCE HEALTH NETWORK.

5.   MS. DAVIS was employed by Defendant, EL PASO COUNTY, specifically, EL PASO COUNTY'S MHMR DEPARTMENT d/b/a EMERGENCE HEALTH NETWORK.  Ms. DAVIS is a Hispanic female, over the age forty (40), with a dependent with a severe disability (her son suffered from a terminal brain tumor during the course of her employment) which required Ms. Davis to take and utilize leave pursuant to the Family Medical Leave Act (herein "FMLA") in order to care for her son during his terminal illness.

6.   Plaintiff was discriminated against by Defendants during the course of her employment with MHMR. Plaintiff opposed such discrimination. Upon such opposition, Defendants unlawfully retaliated against Plaintiff ultimately terminating Plaintiff from her employment in contradiction to the protections afforded to employees by Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEX. LAB. CODE ANN. § 21.001, *et seq.*

Copy from re:SearchTX

7.   PLAINTIFF timely filed her Charge of Discrimination & Retaliation with the Equal Employment Opportunity Commission (herein, "EEOC") and the same was investigated by the agency.

8.   Defendant, **COUNTY OF EL PASO,** is a political subdivision of the State of Texas and may be served with citation by serving the County Judge, **MR. RICARDO A. SAMANIEGO,** and he may be served at **500 E. SAN ANTONIO, SUITE 301, EL PASO, TEXAS 79901**, or wherever he may be found.

9.   Defendant, **EL PASO COUNTY MHMR d/b/a EMERGENCE HEALTH NETWORK**, is a department of the COUNTY OF EL PASO, and thus may be served at its administrative offices located at 201 E. Main Suite 600, El Paso, Texas 79901.

10. Pursuant to Texas Rule of Civil Procedure 28, Defendants are being sued herein under their known and publicly identified assumed names, including each entities' common name for purposes of enforcing Plaintiff's substantive rights, and all such assumed and/or common names utilized by Defendants, disclosed and undisclosed, are incorporated by reference herein and serve as identifiers for DEFENDANT COUNTY OF EL PASO AND EL PASO MHMR d/b/a EMERGENCE HEALTH NETWORK for purposes of this lawsuit.

## C. JURISDICTION

11. This Court has jurisdiction of the Parties and the subject matter of this lawsuit.

12. Jurisdiction is invoked to seek a redress of violations of the Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEX. LAB. CODE ANN. § 21.001, *et seq*., the American with Disabilities Act of 1990, codified as 42 U.S.C. § 12101, as amended (herein the "ADA"), and 29 C.F.R. Part 825 (§825.100) the Family and Medical Leave Act of 1993, as amended, herein "FMLA."

Copy from re:SearchTX

13.     Ms. DAVIS was subjected to unlawful employment practices committed in the State of Texas, El Paso County.

14.     Venue is proper in El Paso County, Texas, by reason of the provisions of Section 15.002(a) (l), Texas Civil Practice and Remedies Code, since all events forming the basis of this suit occurred in this county.

15. Further, Ms. DAVIS is a resident of the United States and, during all times material hereto, during the course of the events of this action, was a resident of El Paso County, Texas.

16. Defendants employed Ms. DAVIS at the MHMR D/B/A EMERGENCE HEALTH NETWORK offices, which are a part of EL PASO COUNTY government, in its offices in El Paso, Texas, where Defendants collectively maintain a place of business.

17. Ms. DAVIS is an "employee" within the meaning of the Texas Commission on Human Rights Act of 1983, TEX. LAB. CODE ANN. § 21.002(8).

18. Defendants are an entity that do business and have done business in El Paso County, Texas, and are considered "employers" within the meaning of the Texas Commission on Human Rights Act of 1983, TEX. LAB. CODE ANN. § 21.002(7).

19. Specifically, Defendants EL PASO COUNTY AND EL PASO MHMR d/b/a EMERGENCE HEALTH NETWORK are (d) (4) employers within TEX. LAB. CODE ANN. § 21.2585 of the Act, and in any event is at least category a (d) (1) employer within said section.

20. This is a proceeding for compensatory relief, as well as all other relief applicable to secure the rights of Plaintiff under TEX. LAB. CODE ANN. § 21.001, *et seq.* and under common law claims.

### **D. FACTS**

21. Ms. DAVIS is a female over forty (40) years of age of Mexican/Hispanic descent with a dependent son with a terminal illness. Ms. DAVIS was employed by Defendants EL PASO

Copy from re:SearchTX

COUNTY via Defendant EL PASO COUNTY MHMR d/b/a Emergence Health Network as a Training Manager for EHN from on or about April 22, 2021, until Plaintiff was unlawfully terminated by Defendants from her employment on or about April 8, 2022, via constructive discharge.

22. During PLAINTIFF'S tenure with EHN, PLAINTIFF excelled and exceeded standards in terms of her job performance. Plaintiff was never written up or disciplined during this employment.

23. On or about September 23, 2021, PLAINTIFF attended an office meeting where EHN CEO (Daugherty) addressed various employees, including PLAINTIFF. All upper division management was in attendance, including the Chief of Development, Rene Hurtado. During that meeting the CEO expressed herself in a terribly angry and aggressive manner, therein yelling at employees in an unprofessional, belittling, and degrading manner.

24. The CEO accused Plaintiff's department of being "horrible" and "the worst division" in the agency, therein stating that all the previous Human Resources (herein "HR") departments were equally as bad as the current HR. The CEO then pointed out GEORGINA HERNANDEZ (who has also filed a discrimination and retaliation lawsuit against Defendants) and stated she came from the "prior bad HR," and she hoped to "get rid of those people."

25. The CEO then pointed at Vanessa Garcia and April Martinez stating they too were in the "bad HR."

26. Every individual the CEO defamed and pointed out as "horrible," and humiliated in this process, is a Mexican American/Hispanic female.

Copy from re:SearchTX

27. The CEO is Caucasian.

28. The CEO proceeded to then tell the room of employees that the HR Department needed "a Limpia to remove all the bad juju." The CEO stated since the office was being remodeled a "limpia" would help. She stated the carpets needed to be shampooed and the office cleaned, but a "limpia" was necessary. This comment was seen as highly offensive and discriminatory to the individuals in the room (majority Hispanic women) when the commentary came from a Caucasian CEO.

29. The commentary itself in Mexican culture has a negative connotation. A "limpia" is defined as a cleansing of bad spirits or negative energy. When the Caucasian CEO proceeded to direct that comment to a group of Hispanics, she indicated racially that group of Hispanic employees was allegedly contributing to the bad spirit of the organization and produced negative energy that needed to be wiped and cleaned from the organization.

30. After making this discriminatory commentary, the CEO then stated if any employee was not on board, they could look somewhere else for a job.

31. PLAINTIFF was offended and brought formal complaints of discrimination and harassment to GEORGINA HERNANDEZ'S attention (the HR Director at the time).

32. After opposing this discrimination in the workplace, and contemporaneous to Plaintiff's notification to the CEO and upper management of her dependent son's terminal illness and her need for FMLA leave regarding the same, Plaintiff was informed the NEO position she held and was performing at the time would be given to a new hire, Luis Chavarria.

33. Luis Chavarria is a male under the age of forty (40) with six (6) years of experience in the field by comparison to Plaintiff's twenty (20+) years of experience, who had been the organization

Copy from re:SearchTX

for less than month when Plaintiff was informed, Chavarria would be taking over her position with the Agency.

34. Upon his hire, Chavarria and the CEO held private meetings repeatedly; something the CEO did not do with other employees.

35. In and around November 2021, Rene Hurtado informed Plaintiff she was to stop building all NEO items because her job duties were being transferred, per the CEO's directive, to Chavarria.

36. When Chavarria failed to complete the job duties and tasks Plaintiff previously performed which were transferred to him, in and around early December 2021, Plaintiff was told to subsume her duties until Chavarria was capable of performing her job duties and related tasks. She did so.

37. On or about December 16, 2021, Plaintiff was informed by Chavarria that he would be replacing Plaintiff in her position entirely.

38. Plaintiff was then instructed to report to Chavarria as his subordinate. Plaintiff was tasked with training Chavarria in the process of replacing Plaintiff in her position of employment.

39. Plaintiff was aware of constant communication between the CEO and Chavarria regarding Plaintiff's imminent termination, and Chavarria's subsuming of Plaintiff's duties and position upon Plaintiff's termination.

40. On or about January 4, 2022, Rene Hurtado and the CEO were walking through the HR offices discussing the post construction set up following the remodel of the office space.

41. Both individuals walked in front of Plaintiff's office and the CEO asked Hurtado who was going to be in that office, (pointing to Plaintiff's office).

42. Plaintiff was in her office at the time, and it was known by both the CEO and Hurtado she was in the office. Hurtado then whispered to the CEO "that's Doris's office." The CEO then stated, "Well you need to get rid of her and you'll have the last two offices available to work with."

43. On or about February 3, 2022, Luis Chavarria stated that he had several meetings with the CEO, and he was told he was formally taking over Plaintiff's NEO position and her job duties related to internal trainings.

44. Plaintiff was informed at that time she was to be Chavarria's subordinate, report directly to him, Chavarria was to be her superior in the organization, and Plaintiff was expected to support all of his efforts. Plaintiff was further told to abandon her other job duties to present herself at all NEO courses taught by Chavarria for purposes of watching him train.

45. Plaintiff was still responsible for managing the Relias system and collaborating on audits. When she informed Chavarria of these other responsibilities, he would quickly and visibly anger, yell at Plaintiff, berate her, and harass her publicly until she agreed to watch him train in the position Plaintiff previously held with the organization.

46. Soon thereafter, Plaintiff's subordinate report, Jessica Gurrola, was removed from her supervision and moved to Chavarria's supervision.

47. Plaintiff was then informed formally by Rene Hurtado that she was being demoted, stripped of her title, and all NEO and internal training duties were removed from her responsibilities and given to Chavarria who would subsume Plaintiff's title, pay, responsibilities and subordinate reports.

48. Chavarria at the time only had six (6) years of training experience by comparison to Plaintiff's twenty (20+) years of training experience. Chavarria had been with the organization less than a year at this time.

49. Chavarria was not aware of the training standards, rules, regulations of the agency and had not represented the agency during audits, in contrast to Plaintiff, when he took over her position.

50. Additionally, he did not hold certification for the position, like Plaintiff.

51. Plaintiff's demotion and removal of her duties and title and pay occurred after Plaintiff outcried Defendants' discrimination and while Plaintiff was struggling to care for her terminally ill son battling a brain tumor. The CEO did not permit Plaintiff to take FMLA leave she had become eligible for during the course of her employment, in order to take her son to his infusions and doctor appointments.

52. Plaintiff outcried the refusal by the organization to allow her to take FMLA leave to care for her terminally ill son; the organization did nothing to correct the situation.

53. On or about February 28, 2022, Plaintiff outcried to then Chief of HR, Iris Sandoval that Plaintiff felt she was being subjected to discrimination and retaliation due to Plaintiff's age, race, associational disability related to her terminally ill son, and need for related FMLA leave to care for her son.

54. Nothing was done in this regard on the part of Sandoval or the Agency. The Agency did not investigate in this regard, did not interview anyone in this regard, and did not correct or cease the discrimination and retaliation against PLAINTIFF.

55. On or about March 8, 2022, Sandoval removed Plaintiff physically from her office and gave the office to another employee under the age of forty (40) who had been there for approximately a week and already shared a physical office with another HR employee (therein did not need another physical office space).

Copy from re:SearchTX

56. On or about March 21, 2022, Plaintiff was once again present while the CEO informed Sandoval that Plaintiff should be "thrown to the floor" and removed from any office space. The CEO then stated loudly, for Plaintiff to hear, "you can get rid of her if you want."

57. On or about March 30, 2022, Plaintiff's workspace including her computer, screens, telephone, etc. were removed from her office without her being present, and PLAINTIFF'S things were deposited in a communal area.

58. Plaintiff once again requested this retaliation and harassment cease, and requested she be allowed FMLA leave to be able to care for her terminally ill son. Defendants refused to cease the retaliation, discrimination, and harassment against Plaintiff; continued to discriminate against Plaintiff and further making Plaintiff's ability to perform her job duties impossible; continued to strip and remove such job duties so Plaintiff was left with very few duties related to her original employment position, and therein refused to allow Plaintiff to take FMLA leave to care for her terminally ill son.

59. At this point, Defendants' behavior created health issues related to stress, anxiety, and desperation with Plaintiff stemming from the abuse, discrimination, and retaliation she was being subjected to by Defendants. In order to preserve her own health and attend to her terminally ill son, DEFENDANTS gave PLAINTIFF no choice but to resign her employment position, therein constructively discharging PLAINTIFF from her employment with DEFENDANTS.

60. Plaintiff was discriminated against on account of her sex (gender/female), her age (over the age of forty), her associational disability related to her dependent son with a terminal illness, her need for FMLA LEAVE to care for her terminally ill son, and her opposition to the aforesaid discrimination which resulted in retaliation by Defendants culminating in Plaintiff's constructive discharge, all of which are in violation of Title VII of the Civil Rights Act of 1964, as amended, the Texas Labor Code, Ch. 21.051 and 21.055 (formerly the Texas Commission on Human Rights Act), as amended, and the ADA,

Rehabilitation Act, 29 C.F.R. Part 1630 which precludes employers from imposing associational disability discrimination on employees with dependents suffering from illness and disabilities, and 29 C.F.R. Part 825 (§825.100) the Family and Medical Leave Act of 1993, as amended, herein "FMLA."

61. PLAINTIFF filed a timely EEOC Charge of Discrimination and Retaliation. Pursuant to the "work sharing agreement" between the TWC and the EEOC, the charge was investigated thereafter by the EEOC, therein dually filed with the TWC, EEOC Charge number 453-2022-01011. This Charge is attached herein as Exhibit "A."

62. On or about March 16, 2023, the EEOC mailed a Notice of Right to File a Civil Action to PLAINTIFF, wherein PLAINTIFF was provided notice of her right to file civil action with respect to her Charge of Discrimination and Retaliation.

63. Accordingly, PLAINTIFF timely files this suit.

64. Plaintiff's Notice of Right to File a Civil Action from the EEOC and correspondent TWC Notice of Right to Sue is attached herein and incorporated by reference as Exhibit "B."

65. As such, all conditions precedent to the filing of this action have been fulfilled.  To the extent any time limits have not been complied with, same are futile, have been waived, or are tolled on account of agreement and/or fraud; Defendants are estopped from asserting the same.

### E.  CLAIMS FOR RELIEF
**COUNT ONE**
**(RACE Discrimination against DEFENDANTS)**

66. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

67. At all times set forth hereinafter, Defendants respectively are an "employer" and a "respondent" as defined by Texas Labor Code § 21.002.  Defendants are subject to the provisions of Chapter 21 of the Texas Labor Code.

Copy from re:SearchTX

68. Plaintiff is a Hispanic female who was subjected to racial discrimination by Defendants, in that she was treated disparately and suffered adverse actions by Defendants on account of her race (Hispanic) and was terminated ultimately by Defendants on account of her race.

69. DEFENDANTS discriminated and retaliated against PLAINTIFF because of her race, despite the fact PLAINTIFF was protected from such discrimination and retaliation by Chapter 21 of the Texas Labor Code as described herein.

70. Defendants violated Chapter 21 by, *inter alia*, (a) creating a hostile discriminatory work environment (b) refusing and failing to provide PLAINTIFF with equal terms and conditions of employment, and other advantages and privileges of employment provided for non-HISPANIC employees; (c) terminating PLAINTIFF unlawfully under pretextual grounds via constructive discharge; (d) retaliating against PLAINTIFF for asserting her rights, and interfering or intimidating her from taking action regarding her opposition to discrimination;(e) terminating PLAINTIFF because of her race; and (f) failing to take prompt and equitable steps to remedy discrimination and retaliation.

71. As a direct and proximate result of the foregoing, PLAINTIFF was caused to suffer injury and resulting damages, for which she sues, including, but not limited to:

(a) mental/emotional anguish, inconvenience, physical anxiety, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and present;

(b) loss of earnings and future earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future prior to his reinstatement;

(c) Attorney's fees and costs of court, inclusive of expert witness fees.

72. Defendants acted with malice and/or reckless indifference to the state-protected rights of PLAINTIFF, thus PLAINTIFF seeks punitive damages for this outrageous conduct.

**COUNT TWO**
**(AGE Discrimination against DEFENDANTS)**

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

74. At all times set forth hereinafter, Defendants respectively are an "employer" and a "respondent" as defined by Texas Labor Code § 21.002. Defendants are subject to the provisions of Chapter 21 of the Texas Labor Code

75. Plaintiff is a Hispanic female over the age of forty (40) who was subjected to age discrimination by Defendants, in that she was treated disparately and suffered adverse actions by Defendants on account of her age and was terminated ultimately by Defendants on account of her age while identically and/or similarly situated employees under the age of forty (40) did not suffer the same hostility, discrimination and adverse treatment by Defendants.

76. DEFENDANTS discriminated and retaliated against PLAINTIFF because of her age, despite the fact PLAINTIFF was protected from such discrimination and retaliation by Chapter 21 of the Texas Labor Code.

77. Defendants violated Chapter 21 by, *inter alia*, (a) creating a hostile discriminatory work environment (b) refusing and failing to provide PLAINTIFF with equal terms and conditions of employment, and other advantages and privileges of employment provided for employees under the age of forty (40); (c) terminating PLAINTIFF unlawfully under pretextual grounds; (d) retaliating against PLAINTIFF for asserting her rights, and interfering or intimidating her from taking action regarding her opposition to discrimination;(e) terminating PLAINTIFF because of her race; and (f) failing to take prompt and equitable steps to remedy discrimination and retaliation by Defendants.

78. As a direct and proximate result of the foregoing, PLAINTIFF was caused to suffer injury and resulting damages, for which she sues, including, but not limited to:

Copy from re:SearchTX

(a) mental/emotional anguish, inconvenience, physical anxiety, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and present;

(b) loss of earnings and future earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future prior to his reinstatement;

(c) Attorney's fees and costs of court, inclusive of expert witness fees.

79. Defendants acted with malice and/or reckless indifference to the state-protected rights of PLAINTIFF, thus PLAINTIFF seeks punitive damages for this outrageous conduct.

## COUNT THREE
## (RETALIATION against DEFENDANTS)

80. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

81. At all times set forth hereinafter, Defendants respectively are an "employer" and a "respondent" as defined by Texas Labor Code § 21.002. Defendants are subject to the provisions of Chapter 21 of the Texas Labor Code.

82. Plaintiff is a Hispanic female who was subjected to racial and age discrimination by Defendants, in that she was treated disparately and suffered adverse actions by Defendants on account of her race (Hispanic) and her age (over the age of forty) and was terminated ultimately by Defendants on account of her race and age via constructive discharge.

83. DEFENDANTS were aware of PLAINTIFF'S race and age, and her opposition to discrimination on the basis of her race and age by DEFENDANTS in the course of his employment.

84. DEFENDANTS retaliated against PLAINTIFF for opposing this discrimination.

85. DEFENDANTS discriminated and retaliated against PLAINTIFF because of her race and age, when she opposed the same, Defendants ultimately retaliated against her despite the fact

PLAINTIFF was protected from such discrimination and retaliation by Chapter 21 of the Texas Labor Code.

86. Defendants violated Chapter 21 by, *inter alia*, (a) creating a hostile discriminatory work environment (b) refusing and failing to provide PLAINTIFF with equal terms and conditions of employment, and other advantages and privileges of employment provided for non-HISPANIC under the age of 40 employees; (c) terminating PLAINTIFF unlawfully via constructive discharge under pretextual grounds in retaliation for opposing the aforesaid discrimination; (d) retaliating against PLAINTIFF for asserting her rights, and interfering or intimidating her from taking action regarding her opposition to discrimination;(e) terminating PLAINTIFF because of her race and age and her opposition for discrimination in her workplace, and (f) failing to take prompt and equitable steps to remedy discrimination and retaliation.

87. As a direct and proximate result of the foregoing, PLAINTIFF was caused to suffer injury and resulting damages, for which she sues, including, but not limited to:

    (a) mental/emotional anguish, inconvenience, physical anxiety, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and present;

    (b) loss of earnings and future earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future prior to his reinstatement;

    (c) Attorney's fees and costs of court, inclusive of expert witness fees.

88. Defendants acted with malice and/or reckless indifference to the state-protected rights of PLAINTIFF, thus PLAINTIFF seeks punitive damages for this outrageous conduct.

## COUNT FOUR
## (ASSOCIATIONAL DISABILITY DISCRIMINATION against DEFENDANTS)

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

90. Plaintiff informed Defendants of the disability of her immediate family member, therein her son, who was suffering from a brain tumor which was rendered terminal and the need for Plaintiff to provide care for her son related to his illness.

91. Plaintiff requested accommodation to be allowed to take her son to his infusions and to his doctor's visits.

92. Defendants refused to accommodate PLAINTIFF in this regard.

93. Title I of the ADA makes it unlawful for any employer with 15 or more employees (including a state or local government employer) to discriminate against a qualified applicant or employee because of a disability in any aspect of employment. In addition to protecting qualified applicants and employees with disabilities from employment discrimination, the "association" ADA provision protects applicants and employees from discrimination based on their **relationship or association** with an individual with a disability, whether or not the applicant or employee has a disability.[1]

94. The association provision of the ADA prohibits employment discrimination against a person, whether or not he or she has a disability, because of his or her known relationship or association with a person with a known disability. As such, an employer is prohibited from making adverse employment decisions based on unfounded concerns about the known disability of a family member or anyone else with whom the applicant or employee has a relationship or association. *Id.*

95. An employer may not terminate or refuse to hire someone due to that person's known association with an individual with a disability. *Id.*

---

[1] *See* Questions & Answers: Association Provision of the ADA | U.S. Equal Employment Opportunity Commission (eeoc.gov).

Copy from re:SearchTX

96. An employer may not deny an employee any other benefit or privilege of employment that is available to others because of the disability of someone with whom the employee has a relationship or association. *Id.*

97. Though only qualified applicants and employees with disabilities are entitled to reasonable accommodation under the ADA, the ADA requires an employer avoid treating an employee differently than other employees because of his or her association with a person with a disability. As such, an employer may not discriminate against one employee who has the need for a reasonable accommodation related to the disability of his family member, while allowing such an accommodation for identically situated employees outside the first employee's class. *Id.*

98. Defendants discriminated against Plaintiff when they refused to allow Plaintiff her requested accommodation while therein accommodating Plaintiff's identically situated colleagues, while denying Plaintiff the ability to leave intermittently to take her terminally ill son to his infusions and doctor's appointments. Additionally, Defendants discriminated against PLAINTIFF upon becoming aware of her need to care for her son, and ultimately constructively discharged PLAINTIFF after she requested a reasonable accommodation for associational disability and FMLA leave to attend to the same. All acts which are prohibited pursuant to the protections afforded to employees by the ADA.

99. Plaintiff asserts that her association with a disabled person was a/the motivating factor and consideration in Defendant's mistreatment, abuse, discrimination, and termination of Plaintiff's employment therefore violating THE AMERICANS WITH DISABILITY ACT.

100. As a direct and proximate result of the foregoing, Plaintiff was caused to suffer injury and resulting damages, for which he sues, including, but not limited to:

(a) mental/emotional anguish, inconvenience, physical anxiety, physical pain and discomfort, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and future.

(b) back pay, front pay, loss of earnings and earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future.

101.    Defendant acted with malice or reckless indifference to the state-protected rights of Plaintiff, and Plaintiff seeks punitive damages for this outrageous conduct.

102.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's policies, practices, customs, and usages set forth herein, thus he requests declaratory and injunctive relief as a means of securing relief for such wrongs.

## COUNT FIVE
## (FMLA RETALIATION against DEFENDANTS)

103.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

104.    Plaintiff informed Defendants of her disabled immediate family member, therein her son suffering from a terminal brain tumor, and the fact she needed to attend to her son, accompanying him to his infusions and doctor's visits, as a result of his disability.

105.    Plaintiff solely required intermittent FMLA leave, which she was entitled to, in order to attend to her terminally ill son's needs.

106.    At no time did DEFENDANTS allow PLAINTIFF to utilize FMLA LEAVE to care for her son.

107.    In fact, Defendants did not afford PLAINTIFF such leave, did not explore the possibility of such leave, and instead, terminated Plaintiff from her employment via constructive discharge upon becoming aware of her need for such leave.

Copy from re:SearchTX

108.     Plaintiff will establish that her expression of a need for FMLA leave to care for her terminally ill son was a/the motivating factor in Defendants' decision to terminate her via constructive discharge, whereas the "motivating factor" is simply one reason Defendants took the action they did, not necessarily the only reason.

109.     Defendants' refusal to grant Plaintiff FMLA leave to care for terminally ill son motivated Defendants to terminate her in contradiction to the Family Medical Leave Act.

110.     As a direct and proximate result of the foregoing, Plaintiff was caused to suffer injury and resulting damages, for which he sues, including, but not limited to:

    (a) mental/emotional anguish, inconvenience, physical anxiety, physical pain and discomfort, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and future.

    (b) back pay, front pay, loss of earnings and earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future.

111.     Defendants acted with malice or reckless indifference to the state-protected rights of Plaintiff, and Plaintiff seeks punitive damages for this outrageous conduct.

112.     Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' policies, practices, customs, and usages set forth herein, thus he requests declaratory and injunctive relief as a means of securing relief for such wrongs.

## F.  DAMAGES

113.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

114.     By this reference, PLAINTIFF hereby incorporates all preceding paragraphs of this Petition as if they were set forth within this cause of action.

Copy from re:SearchTX

115.    PLAINTIFF has suffered injury and resulting damages, for which she is suing,  as detailed herein in this PETITION.

116.    Additionally, PLAINTIFF asks for a declaration that his rights under Chapter 21 of the Texas Labor Code were  violated;

    a.  Granting of a permanent injunction against Defendants ,  enjoining Defendants and their officers, successors, assigns and all persons in active concert or participation with it, from engaging in any further practice which  discriminates against any employee on the basis of such employees race, age, and opposition to discrimination;

    b.  And any other relief the Court deems just and proper.

117.    Defendant acted with malice or reckless indifference to the state-protected rights of Plaintiff and Plaintiff seeks punitive damages for this outrageous conduct.

## G. DEMAND FOR JURY

118.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

119.    By this reference, PLAINTIFF hereby incorporates all preceding paragraphs of this Petition as if they were set forth within this cause of action.

120.    Plaintiff demands a jury trial at this time.

## H. REQUEST FOR DISCLOSURE

121.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

122.    By this reference, PLAINTIFF hereby incorporates all preceding paragraphs of this Petition as if they were set forth within this cause of action.

Copy from re:SearchTX

123.    Under Texas Rule of Civil Procedure 194, Plaintiff requests that DEFENDANTS disclose,  within the requisite time afforded by the Texas Rules of Civil Procedure the information or material described in Rule  194.

## I. PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff respectively prays that Defendants be cited to appear and answer herein, and that upon final hearing hereof, the Court grant Plaintiff the relief cited herein.

Respectfully submitted,
The Hanshew Law Firm, PLLC
**Soraya Yanar Hanshew, Esq.**
632 Moondale Dr.
El Paso, Texas  79912
syhlaw@outlook.com
(915) 491-6181 Telephone
(915) 996-9907 Facsimile

SORAYA YANAR HANSHEW
State Bar No. 24047151

**ATTORNEY FOR PLAINTIFF**

Copy from re:SearchTX

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 453-2022-01011 |

| Texas Workforce Commission Civil Rights Division | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mrs.  Doris C. Davis** | **915-494-6610** | **06/14/1971** |

| Street Address | City, State and ZIP Code |
|---|---|
| **11812 Daplin Way** | **El Paso, TX, 79934** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Emergence Health Network - MHMR** | **>500** | **915-887-3410** |

| Street Address | City, State and ZIP Code |
|---|---|
| **201 E. Main Suite 600** | **El Paso, TX, 79901** |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

F M L A  ☒  OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **09/20/2021**   Latest **04/08/22**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired and worked as the Training Manager for Emergence Health Network from April 22, 2021, to April 8, 2022. During my tenure with Emergence Health Network, I excelled and exceeded standards in terms of my job performance.  I was never written up or disciplined during this employment.  On or about September 23, 2021, I attended an office meeting where the CEO (Kristi Daughtery) addressed various employees, including myself. All upper division management was in attendance, including the Chief of Development–Rene Hurtado. During that meeting the CEO expressed herself in a terribly angry and aggressive manner, therein yelling at employees in an unprofessional, belittling, and degrading manner. She alleged we were "horrible" and "the worst division" in the agency.  She further stated that all the previous HR's were equally as bad as we were and that she could not have a good relationship with any of them. She then pointed Georgina Hernandez (my colleague) out and said that she came from "the prior bad HR." She then stated "she got rid" of those people. She also pointed at Vanessa Garcia and April Martinez and stated that they too had been in the "bad HR." (Everyone she pointed out as being a part of the bad HR were Mexican Americans.) She then stated if "we don't like it" we could just leave. She went on to become very racially offensive. In a room full of Mexican American women, she stated that we all needed a "limpia" which insinuated that we were all dirty or had bad juju and needed a cleansing. This term when said to a Mexican American woman is very offensive and racially discriminatory, especially, when it comes from a Caucasian female. I was very offended and immediately told my supervisor, Georgina Hernandez, that I took great offense at this discrimination. Ms. Hernandez later reported it to the HR Director, Peter Fargo. At the end of the meeting, the CEO asked us if we had anything to say. One of our employees, Jessica Gurrola, shifted in her seat and the CEO aggressively yelled at her "what, do you have a question!"  Jessica then quickly said "no." If any of us had a questions or said anything at that time it was clear the CEO would have yelled and degraded us in the same way.  During this meeting the CEO also stated she was bringing in a consultant from UTEP as an HR instructor.  We were told to "make ourselves available" and "answer all his questions." When Mr. Posthema came in, he interviewed us and had opinions on trainings we needed to complete. He stated over all, we were a good division. When his allegedly "highly valued opinion" wasn't what she wanted hear so she hired another consultant. Jan Chaplin. That consultant also did not believe we should be fired. Thereafter, the CEO informed us the NEO position (that I was performing) would now be done by new hire Luis Chavarria (male and under the age of 40). The CEO would then have private meetings with Chavarria constantly. In and around November 2021, Rene Hurtado told me that I needed to stop building all NEO items because Kristi (CEO) wanted Chavarria to handle them instead of me. Luis failed to handle them and Rene came back to me in December and told me to handle them a bit longer until Luis was ready to take them over. Luis was not aware of how to complete these duties. On or about December 16 2021 I was informed that Chavarria would be replacing me, by Chavarria himself. I was told moving forward I would be reporting to Chavarria and he would be subsuming my NEO and other training duties. I was then informed I would have to train him to replace me. Chavarria informed me the CEO indicated all training would be under Chavarria and they were only waiting on the CEO to decide how many more duties she was going to assign him before he started taking over my division. There was constant communication between the CEO and Chavarria regarding my termination and Chavarria's taking over my duties and position upon my being terminated. On or about January 4th, 2022 Rene and the CEO Kristi were walking through the HR offices

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

discussing the post construction set up. They walked in front of my office and Kristi asked Rene who is going to be in that office, (pointing to my office). They both knew I was in the office and could hear them because he whispered to the CEO "that's Doris's." She then said, "well you need to get rid of her and you'll have the last two offices available to work with." On or about February 3rd, 2022, Luis Chavarria stated that he had several meetings with Kristi and she told him to tell me that Chavarria would be taking over NEO and internal trainings from me. He informed me that I was now on his team and he was my superior. He said that his boss, Kristi, told him he could do whatever he wanted to do with training and that I was to support all his efforts. He also stated that he wanted me in all his NEO courses to watch him do the trainings. When I told him no I would not, I still had to manage the Relias system, collaborate and do audits he got angry and would come to my office to yell at me, berate me, and harass me. My report, Jessica Gurrola, was then removed from my supervision and moved to Chavarria shortly thereafter. Kristi then sent Rene Hurtado to inform me that she was demoting me, stripping me of my title, removing NEO and all of internal training duties from me and giving everything to my younger (under the age of 40) male coworker, Luis Chavarria. At that point, Luis Chavarria had 6 years of training experience by comparison to my 20 years of training experience. He also did not know any of the training standards, rules, regulations of the agency and had not represented the agency during audits and passed as I had. He was also not certified like I am. I believe I was demoted, harassed, humiliated, my duties and title were stripped due to my outcry opposing the CEO's discrimination in the workplace. During this time my son struggled with a terminal illness. Kristi did not permit me to take needed FMLA leave to take him to his infusion and doctor appointments and further discriminated and retaliated against me due to my son's terminal disability and medical condition. On or about February 28th, 2022 I advised Iris (head of HR) that I felt I was being discriminated and retaliated against and the CEO was clearly pushing me out and eliminating my position. Iris said she would try to help me, but did not. On or about March 8th, 2022 Iris came to speak to me to inform me my office (which I needed) was being taken from me and given to my replacement. Iris admitted knowing I needed the office space for collaboration meetings and trainings; however, proceeded to allow the CEO to strip me of my office. On or about March 21st·2022 Iris was walking Kristi through the HR offices in the morning (I had yet to leave my office at this point) and Kristi told Iris that I should be thrown to the floor and shouldn't be in any office. She then stated: "get rid of her if you want." Iris realized then that I was there and could hear them talking about me, she then said to me, "let's go back to my office to talk." On or about March 21st, 2022, after Kristi left Iris's office, Iris came to my office and told me that Kristi wanted me out of my office immediately. She wanted to give it to an employee that had only been there for 1 week at that point, and who also was younger than me (younger than 40 years of age). This employee already had an office space with another fellow HR employee with whom he worked on common projects with, thus he did not need my office. It was clear the stripping of my office was another retaliatory act by the CEO and my employer to punish me for opposing discrimination in the workplace. On March 24th·2022, around 3pm, Kristi came in yelling at Iris demanding my colleague Georgina Hernandez be terminated from her employment. Georgina Hernandez also opposed discrimination, was over the age of 40, is female and Mexican American. Thereafter, Georgina Hernandez was fired by the CEO and Iris. On or about Monday, March 30, 2022, 08:00 am, Maria Mireles from IT informed me my entire work set up was moved out of my office space. By the time I came in at 09:00am, my computer and screens were being moved out of my office space and I was told by Iris to move the rest of my stuff to a communal area. On or about April 6, 2022, at a PMAB training out of town, Luis stated that Kristi told him that he was taking over all my job duties ultimately and my only role now was to train him how to perform my job. He stated he would be changing several processes and procedures because Kristi, his boss, said he could do whatever he wanted with my training division. The hostile work environment, continual harassment, and retaliatory acts by my employer at this point caused me great stress which have resulted in lasting medical issues and emotional distress. I ultimately was constructively discharged from my employment as a result of the discrimination I opposed and the retaliation I suffered as a result of opposing discrimination. I was replaced by a male employee under the age of 40 with no dependents with disabilities. I believe that I have been discriminated against and subjected to a hostile work environment and retaliation because of my gender (female), my age (over the age of 40), and my association with a dependent with disabilities and a terminal illness. I was terminated from my employment in retaliation for reporting, opposing, and complaining about this discrimination as well as FMLA interference, all of which are in violation of Title VII of the Civil Rights Act of 1964, as amended, the Texas Labor Code, Ch. 21.051 and 21.055 (formerly the Texas Commission on Human Rights Act), as amended, and the ADA, Rehabilitation Act, 29 C.F.R. Part 1630 which precludes employers from imposing associational disability discrimination on employees with dependents suffering from illness and disabilities.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true... SIGNATURE OF COMPLAINANT |
| 06/08/2022  _Charging Party Signature_ _Date_ | SUBSCRIBED AND SWORN TO BEFORE ME... (month, day, year) June, 08 2022 |

SABRINA CHIN
My Notary ID # 133701243
Expires April 12, 2026

Copy from re:SearchTX

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Copy from re:SearchTX

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**El Paso Area Office**
100 N. Stanton Street, Suite 600
El Paso, TX  79901
(800) 669-4000
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 03/16/2023

**To:** Doris Davis
    11812 Daplin Way
    El Paso, TX 79934

Charge No: 453-2022-01011

EEOC Representative and email:   Jessie Moreno
    Senior Investigator
    jessie.moreno@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 453-2022-01011.

On behalf of the Commission,

Digitally Signed By: Travis M. Nicholson
03/16/2023

Travis M. Nicholson
District Director

Copy from re:SearchTX

**Cc:**
Michael R Wyatt
EHN
201 E. Main Dr., Ste. 600
El Paso, TX 79901

Iris Sandoval
201 E. Main St., Suite 600
El Paso, TX 79901

Soraya Yanar Hanshew
632 Moondale Dr.
El Paso, TX 79912


Please retain this notice for your records.

Copy from re:SearchTX

# Texas Workforce Commission
A Member of Texas Workforce Solutions

<div style="float:right">

Bryan Daniel, Chairman
Commissioner Representing
the Public

Aaron Demerson
Commissioner Representing
Employers

Alberto Treviño, III
Commissioner Representing
Labor

Edward Serna
Executive Director

</div>

June 8, 2023

### NOTICE OF COMPLAINANT'S RIGHT TO FILE CIVIL ACTION

Doris Davis
c/o Soraya Y.Hanshew
The Hanshew Law Firm, PLLC
632 Moondale Dr.
El Paso, TX  79912

Re:     ***Doris Davis v. Emergence Health Network -MHMR***
        EEOC Complaint # 453-2022-01011

Dear Doris Davis:

The above-referenced case was processed by the United States Equal Employment Opportunity Commission or a local agency. Pursuant to Sections 21.252 and 21.254 of the Texas Labor Code, this notice is to advise you of your right to bring a private civil action in state court in the above-referenced case. YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.

If your case has been successfully resolved by the U. S. Equal Employment Opportunity Commission or another agency through a voluntary settlement or conciliation agreement, you may be prohibited by the terms of such an agreement from filing a private civil action in state court pursuant to the Texas Commission on Human Rights Act, as amended.

The United States Supreme Court has held in *Kremer v. Chemical Construction Corporation*, 456 U.S. 461 (1982), that a federal district court must generally dismiss a Title VII action involving the same parties and raising the same issues as those raised in a prior state court action under Chapter 21 of the Texas Labor Code. Therefore, filing a lawsuit in state court based on the issuance of this notice of right to file a civil action may prevent you from filing a lawsuit in federal court based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e - et seq.

Sincerely,

Bryan D. Snoddy, Director
Civil Rights Division

### RETAIN ENVELOPE TO VERIFY DATE RECEIVED

Copy to:
Emergence Health Network -MHMR
c/o: Michael Wyatt
EHN - Legal Counsel
201 E. Main Dr., Ste. 600
El Paso, TX 79901

101 E. 15th Street, Room 154 • Austin, Texas 78778-0001 • (512) 463-2642 (T) • (512) 463-2643 (F) • Relay Texas: 800-735-2989 (TDD) 800-735-2988 (Voice) • www.texasworkforce.org

Equal Opportunity Employer / Program



TEXAS
WORKFORCE SOLUTIONS
★ ★ ★ ★

Copy from re:SearchTX