EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

|  |  |  |
|---|---|---|
| **DORIS DAVIS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **CAUSE NO. EP-23-CV-00287-KC** |
| **EL PASO COUNTY, EL PASO MHMR** | § | **JURY TRIAL DEMANDED** |
| **d/b/a EMERGENCE HEALTH** | § | |
| **NETWORK;** | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, DORIS DAVIS, (herein, "Plaintiff"), in the above-styled and numbered cause, and files her First Amended Complaint, pursuant to her respectful request for leave from the Court to do the same (Doc. 11), herein complaining of Defendant EL PASO COUNTY (herein "Defendant" and/or "El Paso County"), and Defendant EL PASO MHMR D/B/A EMERGENCE HEALTH NETWORK (herein "MHMR" and/or "EHN" and/or "Defendant"). Plaintiff and Defendants herein will be referred to as the "Parties." Plaintiff for cause shows the Court the following:

## A. NATURE OF ACTION & DISCOVERY CONTROL PLAN

1. This action is brought to remedy discrimination, retaliation, and termination against PLAINTIFF by DEFENDANTS during the course of Plaintiff's employment with DEFENDANT EL PASO COUNTY, TEXAS via EL PASO MHMR d/b/a EMERGENCE HEALTH NETWORK (herein "MHMR" and/or "EHN"). Plaintiff's discrimination claims are raised on the basis of SEX

(GENDER/FEMALE), AGE (over the age of 40), ASSOCIATIONAL DISABILITY Discrimination, FMLA RETALIATION AND RETALIATION in the terms, conditions, and privileges of PLAINTIFF'S employment escalating to Plaintiff's termination as retaliation for opposing such discrimination, which is illegal per the Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEX. LAB. CODE ANN. § 21.001, *et seq.*, which Act's purpose is to secure to those within the state freedom from discrimination and retaliation in employment.

2.   Plaintiff DORIS DAVIS is a resident of El Paso County, Texas, and a prior employee of El Paso COUNTY, specifically the El Paso COUNTY MHMR DEPARTMENT d/b/a EMERGENCE HEALTH NETWORK.

3.   Plaintiff believes Defendants served as co-employers to Plaintiff during her employment with MHMR. In fact, El Paso County introduced as an exhibit to its Motion to Dismiss (Doc. 4), an operational contract "between EHN and the County of El Paso, as referenced in H&S 534.001(d)(1). **EXHIBIT 1: SECOND AMENDMENT TO INTERLOCAL AGREEMENT."** (Doc 4, ¶19). (Doc. 4-1) Plaintiff attaches and incorporates by reference herein this "Interlocal Agreement" as Plaintiff's Exhibit "C" to her First Amended Complaint (herein the "Agreement").

4.   The Agreement establishes that El Paso County and MHMR are absolutely intertwined in the management and administration of Defendant EL PASO MHMR D/B/A EMERGENCE HEALTH NETWORK. (Ex. "C")

5.   The "Interlocal Agreement" in fact states that governance of Defendant MHMR is mutually overseen by El Paso COUNTY and the HOSPITAL DISTRICT. The Agreement indicates that a Board of Trustees shall manage MHMR, but that very Board of Trustees is overseen, administered and managed by both El Paso COUNTY and the HOSPITAL DISTRICT: "El Paso Mental Health and Mental Retardation shall be administered by a Board of Trustees. The

Board of Trustees, hereinafter 'the Board' shall consist of seven (7) persons appointed pursuant to this Agreement *by the County* and the Hospital District, from among the members of the governing bodies of the sponsoring agencies or from among the qualified voters of El Paso County. Each entity will be entitled to three appointments to the seven-member board. The seventh member will be jointly nominated by *the County Judge* and the Chair of the Hospital District Board of Managers. Said nominee must be approved by the governing bodies of the County and the Hospital District to be effective." (Exhibit "C," pg. 2). Accordingly, the Agreement reflects that El Paso COUNTY has equal and final authority, alongside the Hospital District to approve the nominees that are elected to govern MHMR, through its Board of Trustees. As such, the governance, management, and administration of MHMR are controlled by El Paso County, to the extent the County nominates, approves and appoints the individuals that govern MHMR via its Board of Trustees.

6.  This establishes the possibility of co-employer status by both Defendants in regard to Plaintiff's employment with MHMR.

7.  Discovery as to the extent of the co-employment of Plaintiff by Defendants will further delineate the roles of each Defendant in the hiring, firing, and treatment of Plaintiff during the course of her employment with MHMR.

8.  What is clear at the outset, however, is that MHMR is managed, governed and administered by a Board of Trustees that is appointed and overseen by El Paso County. As such, both entities have a say in the administration and acts of MHMR as it relates to its employees, specifically Plaintiff.

## **B.  PARTIES**

9.  Plaintiff DORIS DAVIS (herein "PLAINTIFF" and/or "MS. DAVIS") is a resident of El Paso County, Texas, and a prior employee of Defendant EL PASO COUNTY, specifically the EL PASO COUNTY MHMR DEPARTMENT d/b/a EMERGENCE HEALTH NETWORK.

10. MS. DAVIS was employed by Defendant, El Paso COUNTY, specifically, El Paso COUNTY'S MHMR DEPARTMENT d/b/a EMERGENCE HEALTH NETWORK.  Ms. DAVIS is a Hispanic female, over the age forty (40), with a dependent with a severe disability (her son suffered from a terminal brain tumor during the course of her employment) which required Ms. Davis to take and utilize leave pursuant to the Family Medical Leave Act (herein "FMLA") in order to care for her son during his terminal illness.

11. Plaintiff was discriminated against by Defendants during the course of her employment with MHMR. Plaintiff opposed such discrimination. Upon such opposition, Defendants unlawfully retaliated against Plaintiff ultimately terminating Plaintiff from her employment in contradiction to the protections afforded to employees by Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEX. LAB. CODE ANN. § 21.001, *et seq*.

12. PLAINTIFF timely filed her Charge of Discrimination & Retaliation with the Equal Employment Opportunity Commission (herein, "EEOC") and the same was investigated by the agency.

13. Defendant, **COUNTY OF EL PASO,** is a political subdivision of the State of Texas and may be served with citation by serving the County Judge, **MR. RICARDO A. SAMANIEGO,** and he may be served at **500 E. SAN ANTONIO, SUITE 301, EL PASO, TEXAS 79901**, or wherever he may be found.

14. Defendant, **EL PASO COUNTY MHMR d/b/a EMERGENCE HEALTH NETWORK**, is a department of the COUNTY OF EL PASO, and thus may be served at its administrative offices located at 201 E. Main Suite 600, El Paso, Texas 79901.

15. Pursuant to Texas Rule of Civil Procedure 28, Defendants are being sued herein under their known and publicly identified assumed names, including each entities' common name for

purposes of enforcing Plaintiff's substantive rights, and all such assumed and/or common names utilized by Defendants, disclosed and undisclosed, are incorporated by reference herein and serve as identifiers for DEFENDANT COUNTY OF EL PASO AND EL PASO MHMR d/b/a EMERGENCE HEALTH NETWORK for purposes of this lawsuit.

## C.  JURISDICTION

16. This Court has jurisdiction of the Parties and the subject matter of this lawsuit.

17. Jurisdiction is invoked to seek a redress of violations of the Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended*, TEX. LAB. CODE ANN. § 21.001, *et seq*., the American with Disabilities Act of 1990, codified as 42 U.S.C. § 12101, as amended (herein the "ADA"), and 29 C.F.R. Part 825 (§825.100) the Family and Medical Leave Act of 1993, as amended, herein "FMLA."

18.     Ms. DAVIS was subjected to unlawful employment practices committed in the State of Texas, El Paso County.

19.     Venue is proper in El Paso County, Texas, by reason of the provisions of Section 15.002(a) (l), Texas Civil Practice and Remedies Code, since all events forming the basis of this suit occurred in this county.

20. Further, Ms. DAVIS is a resident of the United States and, during all times material hereto, during the course of the events of this action, was a resident of El Paso County, Texas.

21. Defendants employed Ms. DAVIS at the MHMR D/B/A EMERGENCE HEALTH NETWORK offices, which are a part of El Paso COUNTY government, in its offices in El Paso, Texas, where Defendants collectively maintain a place of business.

22. Ms. DAVIS is an "employee" within the meaning of the Texas Commission on Human Rights Act of 1983, TEX. LAB. CODE ANN. § 21.002(8).

23. Defendants are an entity that do business and have done business in El Paso County, Texas, and are considered "employers" within the meaning of the Texas Commission on Human Rights Act of 1983, Tex. Lab. Code Ann. § 21.002(7).

24. Specifically, Defendants EL PASO COUNTY AND EL PASO MHMR d/b/a EMERGENCE HEALTH NETWORK are (d) (4) employers within Tex. Lab. Code Ann. § 21.2585 of the Act, and in any event is at least category a (d) (1) employer within said section.

25. This is a proceeding for compensatory relief, as well as all other relief applicable to secure the rights of Plaintiff under Tex. Lab. Code Ann. § 21.001, *et seq.* and under common law claims.

### D.  FACTS

26. Ms. DAVIS is a female over forty (40) years of age of Mexican/Hispanic descent with a dependent son with a terminal illness. Ms. DAVIS was employed by Defendants El Paso COUNTY via Defendant EL PASO COUNTY MHMR d/b/a Emergence Health Network ("MHMR" and/or "EHN") as a Training Manager for EHN from on or about April 22, 2021, until Plaintiff was unlawfully terminated by Defendants from her employment on or about April 8, 2022, via constructive discharge.

27. During PLAINTIFF'S  tenure with MHMR, PLAINTIFF excelled and exceeded standards in terms of her job performance.  Plaintiff was never written up  or disciplined during this employment.

28. On or about September 23, 2021, PLAINTIFF attended an office meeting where EHN CEO (Daugherty) addressed various employees, including PLAINTIFF. All upper division management was in attendance, including the Chief  of Development, Rene Hurtado. During that meeting the CEO expressed herself in a terribly angry and aggressive

manner, therein  yelling at employees in an unprofessional, belittling, and degrading manner.

29. The CEO accused Plaintiff's department of being "horrible" and "the worst division" in the agency, therein stating that all the previous Human Resources (herein "HR") departments were equally as bad as the current HR. The CEO then pointed out GEORGINA HERNANDEZ (who has also filed a discrimination and retaliation lawsuit against Defendants) and stated she came from the "prior bad HR," and she hoped to "get rid of those people."

30. The CEO then pointed at Vanessa Garcia and April Martinez stating they too were in the "bad HR."

31. Every individual the CEO defamed and pointed out as "horrible," and humiliated in this process, is a Mexican American/Hispanic female.

32. The CEO is Caucasian.

33. The CEO proceeded to then tell the room of employees that the HR Department needed "a Limpia to remove all the bad juju." The CEO stated since the office was being remodeled a "limpia" would help. She stated the carpets needed to be shampooed and the office cleaned, but a "limpia" was necessary. This comment was seen as highly offensive and discriminatory to the individuals in the room (majority Hispanic women) when the commentary came from a Caucasian CEO.

34. The commentary itself in Mexican culture has a negative connotation. A "limpia" is defined as a cleansing of bad spirits or negative energy. When the Caucasian CEO proceeded to direct that comment to a group of Hispanics, she indicated racially that group of Hispanic

employees was allegedly contributing to the bad spirit of the organization and produced negative energy that needed to be wiped and cleaned from the organization.

35. After making this discriminatory commentary, the CEO then stated if any employee was not on board, they could look somewhere else for a job.

36. PLAINTIFF was offended and brought formal complaints of discrimination and harassment to GEORGINA HERNANDEZ'S attention (the HR Director at the time).

37. After opposing this discrimination in the workplace, and contemporaneous to Plaintiff's notification to the CEO and upper management of her dependent son's terminal illness and her need for FMLA leave regarding the same, Plaintiff was informed the NEO position she held and was performing at the time would be given to a new hire, Luis Chavarria.

38. Luis Chavarria is a male under the age of forty (40) with six (6) years of experience in the field by comparison to Plaintiff's twenty (20+) years of experience, who had been the organization for less than month when Plaintiff was informed, Chavarria would be taking over her position with the Agency.

39. Upon his hire, Chavarria and the CEO held private meetings repeatedly; something the CEO did not do with other employees.

40. In and around November 2021, Rene Hurtado informed Plaintiff she was to stop building all NEO items because her job duties were being transferred, per the CEO's directive, to Chavarria.

41. When Chavarria failed to complete the job duties and tasks Plaintiff previously performed which were transferred to him, in and around early December 2021, Plaintiff was told to subsume her duties until Chavarria was capable of performing her job duties and related tasks. She did so.

42. On or about December 16, 2021, Plaintiff was informed by Chavarria that he would be replacing Plaintiff in her position entirely.

43. Plaintiff was then instructed to report to Chavarria as his subordinate. Plaintiff was tasked with training Chavarria in the process of replacing Plaintiff in her position of employment.

44. Plaintiff was aware of constant communication between the CEO and Chavarria regarding Plaintiff's imminent termination, and Chavarria's subsuming of Plaintiff's duties and position upon Plaintiff's termination.

45. On or about January 4, 2022, Rene Hurtado and the CEO were walking through the HR offices discussing the post construction set up following the remodel of the office space.

46. Both individuals walked in front of Plaintiff's office and the CEO asked Hurtado who was going to be in that office, (pointing to Plaintiff's office).

47. Plaintiff was in her office at the time, and it was known by both the CEO and Hurtado she was in the office. Hurtado then whispered to the CEO "that's Doris's office." The CEO then stated, "Well you need to get rid of her and you'll have the last two offices available to work with."

48. On or about February 3, 2022, Luis Chavarria stated that he had several meetings with the CEO, and he was told he was formally taking over Plaintiff's NEO position and her job duties related to internal trainings.

49. Plaintiff was informed at that time she was to be Chavarria's subordinate, report directly to him, Chavarria was to be her superior in the organization, and Plaintiff was expected to support all of his efforts. Plaintiff was further told to abandon her other job duties to present herself at all NEO courses taught by Chavarria for purposes of watching him train.

50. Plaintiff was still responsible for managing the Relias system and collaborating on audits. When she informed Chavarria of these other responsibilities, he would quickly and visibly anger, yell at

Plaintiff, berate her, and harass her publicly until she agreed to watch him train in the position Plaintiff previously held with the organization.

51. Soon thereafter, Plaintiff's subordinate report, Jessica Gurrola, was removed from her supervision and moved to Chavarria's supervision.

52. Plaintiff was then informed formally by Rene Hurtado that she was being demoted, stripped of her title, and all NEO and internal training duties were removed from her responsibilities and given to Chavarria who would subsume Plaintiff's title, pay, responsibilities and subordinate reports.

53. Chavarria at the time only had six (6) years of training experience by comparison to Plaintiff's twenty (20+) years of training experience. Chavarria had been with the organization less than a year at this time.

54. Chavarria was not aware of the training standards, rules, regulations of the agency and had not represented the agency during audits, in contrast to Plaintiff, when he took over her position.

55. Additionally, he did not hold certification for the position, like Plaintiff.

56. Plaintiff's demotion and removal of her duties and title and pay occurred after Plaintiff outcried Defendants' discrimination and while Plaintiff was struggling to care for her terminally ill son battling a brain tumor. The CEO did not permit Plaintiff to take FMLA leave she had become eligible for during the course of her employment, in order to take her son to his infusions and doctor appointments.

57. Plaintiff outcried the refusal by the organization to allow her to take FMLA leave to care for her terminally ill son; the organization did nothing to correct the situation.

58. On or about February 28, 2022, Plaintiff outcried to then Chief of HR, Iris Sandoval that Plaintiff felt she was being subjected to discrimination and retaliation due to Plaintiff's age, race,

associational disability related to her terminally ill son, and need for related FMLA leave to care for her son.

59. Nothing was done in this regard on the part of Sandoval or the Agency. The Agency did not investigate in this regard, did not interview anyone in this regard, and did not correct or cease the discrimination and retaliation against PLAINTIFF.

60. On or about March 8, 2022, Sandoval removed Plaintiff physically from her office and gave the office to another employee under the age of forty (40) who had been there for approximately a week and already shared a physical office with another HR employee (therein did not need another physical office space).

61. On or about March 21, 2022, Plaintiff was once again present while the CEO informed Sandoval that Plaintiff should be "thrown to the floor" and removed from any office space. The CEO then stated loudly, for Plaintiff to hear, "you can get rid of her if you want."

62. On or about March 30, 2022, Plaintiff's workspace including her computer, screens, telephone, etc. were removed from her office without her being present, and PLAINTIFF'S things were deposited in a communal area.

63. Plaintiff once again requested this retaliation and harassment cease, and requested she be allowed FMLA leave to be able to care for her terminally ill son. Defendants refused to cease the retaliation, discrimination, and harassment against Plaintiff; continued to discriminate against Plaintiff and further making Plaintiff's ability to perform her job duties impossible; continued to strip and remove such job duties so Plaintiff was left with very few duties related to her original employment position, and therein refused to allow Plaintiff to take FMLA leave to care for her terminally ill son.

64. At this point, Defendants' behavior created health issues related to stress, anxiety, and desperation with Plaintiff stemming from the abuse, discrimination, and retaliation she was being

subjected to by Defendants. In order to preserve her own health and attend to her terminally ill son, DEFENDANTS gave PLAINTIFF no choice but to resign her employment position, therein constructively discharging PLAINTIFF from her employment with DEFENDANTS.

65. Plaintiff was discriminated against on account of her sex (gender/female), her age (over the age of forty), her associational disability related to her dependent son with a terminal illness, her need for FMLA LEAVE to care for her terminally ill son, and her opposition to the aforesaid discrimination which resulted in retaliation by Defendants culminating in Plaintiff's constructive discharge, all of which are in violation of Title VII of the Civil Rights Act of 1964, as amended, the Texas Labor Code, Ch. 21.051 and 21.055 (formerly the Texas Commission on Human Rights Act), as amended, and the ADA, Rehabilitation Act, 29 C.F.R. Part 1630 which precludes employers from imposing associational disability discrimination on employees with dependents suffering from illness and disabilities, and 29 C.F.R. Part 825 (§825.100) the Family and Medical Leave Act of 1993, as amended, herein "FMLA."

66. Plaintiff believes she had an employer-employee relationship with Defendants, wherein both Defendants are considered "employers" pursuant to Texas Commission on Human Rights Act of 1983, TEX. LAB. CODE ANN. § 21.002(7). Both Defendants are engaged in an industry affecting commerce and each respectively has fifteen (15) or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year; Defendants may serve as co-employers and/or agents of one another for purposes of the aforesaid description provided in Paragraph (A); and both Defendants serve as a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.

67. Per the Interlocal Agreement, it appears MHMR is governed, administered and managed by its Board of Trustees that is appointed and managed by El Paso COUNTY. As such,

MHMR's right to hire and fire employees, supervise employees, and set the work schedule of its employees is overseen by its Board of Trustees who are elected by EL PASO COUNTY, and that Board oversees and manages MHMR management employees who oversee, administer and manage all other MHMR employees. (*See* Ex. C)

68. MHMR's ability to set employee's salary, provide benefits to its employees , and set out the terms and conditions of employment for its employees are identically monitored and controlled by its Board of Trustees that is comprised of representatives from El Paso County. The Agreement notes: "The Board of Trustees shall be responsible for the administration of El Paso MHMR. The Board of Trustees shall adopt bylaws for the operation of the Board and El Paso MHMR consistent with state law and this agreement. The Board of Trustees may adopt a new public name or names for El Paso MHMR or the program it operates." Accordingly, El Paso County via its control of the Board of Trustees which governs MHMR are collectively responsible for oversight of MHMR's "operation" and "administration." *See,* EHN Board – Emergence Health Network. This establishes that both Defendants serve as employers for purposes of Plaintiff's Amended Complaint. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015).

69. Additionally, El Paso County is responsible for MHMR's funding (alongside the Hospital District), therein participating in not only the administration and management of the organization but its financial existence. (Ex. C) Finally, the Board of Trustees is comprised of individuals instated by El Paso County, and that Board is responsible for MHMR's hiring/firing/discipline and pay of its employees as an oversight Board, but also directly as it relates to the conditions of employment of MHMR's CEO, who in turn manages all elements of employment for MHMR's other employees. As such, the upper level management of the

organization is mutually run by both Defendants. This is exhibited in Plaintiff's Exhibit "D"

attached and incorporated by reference herein, which is the Board of Trustees' Board Agenda for

a meeting held on September 28, 2023, wherein the Board of Trustees (comprised of El Paso

County elected individuals) discussed "Employee recognitions" and reviewed and discussed

CEO Evaluation and Compensation, pursuant to Tex. Govt Code section 551.074(a) (1)." (Ex. D)

This reflects the Board of Trustees, instated by El Paso County, directly oversees employee

functions.

70. Being the Board of Trustees has the "[t]he right to control [the] employee's conduct"

through its sole control of MHMR'S upper most managing employee (its CEO), there is

sufficient information herein to establish, at least at the onset of Plaintiff's lawsuit, that both

Defendants controlled Plaintiff's employment for purposes of her present claims. *See*

*Muhammad*, 479 F.3d at 380 (quoting *Deal*, 5 F.3d at 119).

71. If the County controls the Board of Trustees, and the Board of Trustees controls the

administration and management of all MHMR employees, it serves that both Defendants are in

control of Plaintiff's hiring, discipline, firing, FMLA requests, FMLA denials/retaliation,

Plaintiff's pay, Plaintiff's work benefits, Plaintiff's ADA requests for accommodation, Plaintiff's

office location and her work schedule. Moreover, per the Interlocal Agreement, El Paso County

has the explicit right to "inspect" MHMR's "work, materials, payrolls, and other data and

records," at is desire and discretion. As such, MHMR's aforesaid employee records are also El

Paso County's records, privy to the County's inspection at any time for any reason. (Ex. C, pg. 8)

This is in addition to the "records and a report relating to [MHMR'S] operation and budget on a

semi-annual basis at a posted meeting of each sponsoring agency" which is due to El Paso

COUNTY semi-annually.

72. For purposes of Plaintiff's FMLA claims, she herein establishes that *both* Defendants have the "power to hire and fire the employees, (2) supervise and control employee work schedules or conditions of employment, (3) determine the rate and method of payment, and (4) maintain employment records." *Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 654 (S.D. Tex. 2011) (quoting *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)).

73. Accordingly, Plaintiff herein satisfies the elements necessary to bring the present suit against both Defendants and therein pursue discovery in regard to the issue of co-employment of Plaintiff by both Defendants.

74. PLAINTIFF filed a timely EEOC Charge of Discrimination and Retaliation. Pursuant to the "work sharing agreement" between the TWC and the EEOC, the charge was investigated thereafter by the EEOC, therein dually filed with the TWC, EEOC Charge number 453-2022-01011. This Charge is attached herein as Exhibit "A-1."

75. On or about March 16, 2023, the EEOC mailed a Notice of Right to File a Civil Action to PLAINTIFF, wherein PLAINTIFF was provided notice of her right to file civil action with respect to her Charge of Discrimination and Retaliation.

76. Accordingly, PLAINTIFF timely files this suit.

77. Plaintiff's Notice of Right to File a Civil Action from the EEOC and correspondent TWC Notice of Right to Sue is attached herein and incorporated by reference as Exhibit "B."

78. As such, all conditions precedent to the filing of this action have been fulfilled. To the extent any time limits have not been complied with, same are futile, have been waived, or are tolled on account of agreement and/or fraud; Defendants are estopped from asserting the same.

## E.  CLAIMS FOR RELIEF
### COUNT ONE
### (RACE Discrimination against DEFENDANTS)

79. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

80. At all times set forth hereinafter, Defendants respectively are an "employer" and a "respondent" as defined by Texas Labor Code § 21.002.  Defendants are subject to the provisions of Chapter 21 of the Texas Labor Code.

81. Plaintiff is a Hispanic female who was subjected to racial discrimination by Defendants, in that she was treated disparately and suffered adverse actions by Defendants on account of her race (Hispanic) and was terminated ultimately by Defendants on account of her race.

82. DEFENDANTS discriminated and retaliated against PLAINTIFF because of her race, despite the fact PLAINTIFF was protected from such discrimination and retaliation by Chapter 21 of the Texas Labor Code as described herein.

83. Defendants violated Chapter 21 by, *inter alia*, (a) creating a hostile discriminatory work environment (b) refusing and failing to provide PLAINTIFF with equal terms and conditions of employment, and other advantages and privileges of employment provided for non-HISPANIC employees; (c) terminating PLAINTIFF unlawfully under pretextual grounds via constructive discharge; (d) retaliating against PLAINTIFF for asserting her rights, and interfering or intimidating her from taking action regarding her opposition to discrimination;(e) terminating PLAINTIFF because of her race; and (f) failing to take prompt and equitable steps to remedy discrimination and retaliation.

84. As a direct and proximate result of the foregoing, PLAINTIFF was caused to suffer injury and resulting damages, for which she sues, including, but not limited to:

    (a)  mental/emotional anguish, inconvenience, physical anxiety, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and present;

    (b)  loss of earnings and future earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future prior to his reinstatement;

    (c)  Attorney's fees and costs of court, inclusive of expert witness fees.

85. Defendants acted with malice and/or reckless indifference to the state-protected rights of PLAINTIFF, thus PLAINTIFF seeks punitive damages for this outrageous conduct.

## COUNT TWO
### (AGE Discrimination against DEFENDANTS)

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

87. At all times set forth hereinafter, Defendants respectively are an "employer" and a "respondent" as defined by Texas Labor Code § 21.002. Defendants are subject to the provisions of Chapter 21 of the Texas Labor Code

88. Plaintiff is a Hispanic female over the age of forty (40) who was subjected to age discrimination by Defendants, in that she was treated disparately and suffered adverse actions by Defendants on account of her age and was terminated ultimately by Defendants on account of her age while identically and/or similarly situated employees under the age of forty (40) did not suffer the same hostility, discrimination and adverse treatment by Defendants.

89. DEFENDANTS discriminated and retaliated against PLAINTIFF because of her age, despite the fact PLAINTIFF was protected from such discrimination and retaliation by Chapter 21 of the Texas Labor Code.

90. Defendants violated Chapter 21 by, *inter alia*, (a) creating a hostile discriminatory work environment (b) refusing and failing to provide PLAINTIFF with equal terms and conditions of employment, and other advantages and privileges of employment provided for employees under the age of forty (40); (c) terminating PLAINTIFF unlawfully under pretextual grounds; (d) retaliating against PLAINTIFF for asserting her rights, and interfering or intimidating her from taking action regarding her opposition to discrimination;(e) terminating PLAINTIFF because of her race; and (f) failing to take prompt and equitable steps to remedy discrimination and retaliation by Defendants.

91. As a direct and proximate result of the foregoing, PLAINTIFF was caused to suffer injury and resulting damages, for which she sues, including, but not limited to:

    (a) mental/emotional anguish, inconvenience, physical anxiety, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and present;

    (b) loss of earnings and future earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future prior to his reinstatement;

    (c) Attorney's fees and costs of court, inclusive of expert witness fees.

92. Defendants acted with malice and/or reckless indifference to the state-protected rights of PLAINTIFF, thus PLAINTIFF seeks punitive damages for this outrageous conduct.

## COUNT THREE
## (RETALIATION against DEFENDANTS)

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

94. At all times set forth hereinafter, Defendants respectively are an "employer" and a "respondent" as defined by Texas Labor Code § 21.002. Defendants are subject to the provisions of Chapter 21 of the Texas Labor Code.

95. Plaintiff is a Hispanic female who was subjected to racial and age discrimination by Defendants, in that she was treated disparately and suffered adverse actions by Defendants on account of her race (Hispanic) and her age (over the age of forty) and was terminated ultimately by Defendants on account of her race and age via constructive discharge.

96. DEFENDANTS were aware of PLAINTIFF'S race and age, and her opposition to discrimination on the basis of her race and age by DEFENDANTS in the course of his employment.

97. DEFENDANTS retaliated against PLAINTIFF for opposing this discrimination.

98. DEFENDANTS discriminated and retaliated against PLAINTIFF because of her race and age, when she opposed the same, Defendants ultimately retaliated against her despite the fact PLAINTIFF was protected from such discrimination and retaliation by Chapter 21 of the Texas Labor Code.

99. Defendants violated Chapter 21 by, *inter alia*, (a) creating a hostile discriminatory work environment (b) refusing and failing to provide PLAINTIFF with equal terms and conditions of employment, and other advantages and privileges of employment provided for non-HISPANIC under the age of 40 employees; (c) terminating PLAINTIFF unlawfully via constructive discharge under pretextual grounds in retaliation for opposing the aforesaid discrimination; (d) retaliating against PLAINTIFF for asserting her rights, and interfering or intimidating her from taking action regarding her opposition to discrimination;(e) terminating PLAINTIFF because of her race and age and her opposition for discrimination in her workplace, and (f) failing to take prompt and equitable steps to remedy discrimination and retaliation.

100.    As a direct and proximate result of the foregoing, PLAINTIFF was caused to suffer injury and resulting damages, for which she sues, including, but not limited to:

(a) mental/emotional anguish, inconvenience, physical anxiety, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and present;

(b) loss of earnings and future earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future prior to his reinstatement;

(c) Attorney's fees and costs of court, inclusive of expert witness fees.

101.    Defendants acted with malice and/or reckless indifference to the state-protected rights of PLAINTIFF, thus PLAINTIFF seeks punitive damages for this outrageous conduct.

## COUNT FOUR
## (ASSOCIATIONAL DISABILITY DISCRIMINATION against DEFENDANTS)

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

90. Plaintiff informed Defendants of the disability of her immediate family member, therein her son, who was suffering from a brain tumor which was rendered terminal and the need for Plaintiff to provide care for her son related to his illness.

91. Plaintiff requested accommodation to be allowed to take her son to his infusions and to his doctor's visits.

92. Defendants refused to accommodate PLAINTIFF in this regard.

93. Title I of the ADA makes it unlawful for any employer with 15 or more employees (including a state or local government employer) to discriminate against a qualified applicant or employee because of a disability in any aspect of employment. In addition to protecting qualified applicants and employees with disabilities from employment discrimination, the "association" ADA provision protects applicants and employees from discrimination based on their **relationship**

**or association** with an individual with a disability, whether or not the applicant or employee has a disability.[1]

94. The association provision of the ADA prohibits employment discrimination against a person, whether or not he or she has a disability, because of his or her known relationship or association with a person with a known disability. As such, an employer is prohibited from making adverse employment decisions based on unfounded concerns about the known disability of a family member or anyone else with whom the applicant or employee has a relationship or association. *Id.*

95. An employer may not terminate or refuse to hire someone due to that person's known association with an individual with a disability. *Id.*

96. An employer may not deny an employee any other benefit or privilege of employment that is available to others because of the disability of someone with whom the employee has a relationship or association. *Id.*

97. Though only qualified applicants and employees with disabilities are entitled to reasonable accommodation under the ADA, the ADA requires an employer avoid treating an employee differently than other employees because of his or her association with a person with a disability. As such, an employer may not discriminate against one employee who has the need for a reasonable accommodation related to the disability of his family member, while allowing such an accommodation for identically situated employees outside the first employee's class. *Id.*

98. Defendants discriminated against Plaintiff when they refused to allow Plaintiff her requested accommodation while therein accommodating Plaintiff's identically situated colleagues, while denying Plaintiff the ability to leave intermittently to take her terminally ill son to his

---

[1] *See* Questions & Answers: Association Provision of the ADA | U.S. Equal Employment Opportunity Commission (eeoc.gov).

infusions and doctor's appointments. Additionally, Defendants discriminated against PLAINTIFF upon becoming aware of her need to care for her son, and ultimately constructively discharged PLAINTIFF after she requested a reasonable accommodation for associational disability and FMLA leave to attend to the same. All acts which are prohibited pursuant to the protections afforded to employees by the ADA.

99. Plaintiff asserts that her association with a disabled person was a/the motivating factor and consideration in Defendant's mistreatment, abuse, discrimination, and termination of Plaintiff's employment therefore violating THE AMERICANS WITH DISABILITY ACT.

100.    As a direct and proximate result of the foregoing, Plaintiff was caused to suffer injury and resulting damages, for which he sues, including, but not limited to:

    (a) mental/emotional anguish, inconvenience, physical anxiety, physical pain and discomfort, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and future.

    (b) back pay, front pay, loss of earnings and earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future.

101.    Defendant acted with malice or reckless indifference to the state-protected rights of Plaintiff, and Plaintiff seeks punitive damages for this outrageous conduct.

102.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's policies, practices, customs, and usages set forth herein, thus she requests declaratory and injunctive relief as a means of securing relief for such wrongs.

**COUNT FIVE**
**(FMLA RETALIATION against DEFENDANTS)**

103.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

104.    Plaintiff informed Defendants of her disabled immediate family member, therein her son suffering from a terminal brain tumor, and the fact she needed to attend to her son, accompanying him to his infusions and doctor's visits, as a result of his disability.

105.    Plaintiff solely required intermittent FMLA leave, which she was entitled to, in order to attend to her terminally ill son's needs.

106.    At no time did DEFENDANTS allow PLAINTIFF to utilize FMLA LEAVE to care for her son.

107.    In fact, Defendants did not afford PLAINTIFF such leave, did not explore the possibility of such leave, and instead, terminated Plaintiff from her employment via constructive discharge upon becoming aware of her need for such leave.

108.    Plaintiff will establish that her expression of a need for FMLA leave to care for her terminally ill son was a/the motivating factor in Defendants' decision to terminate her via constructive discharge, whereas the "motivating factor" is simply one reason Defendants took the action they did, not necessarily the only reason.

109.    Defendants' refusal to grant Plaintiff FMLA leave to care for terminally ill son motivated Defendants to terminate her in contradiction to the Family Medical Leave Act.

110.    As a direct and proximate result of the foregoing, Plaintiff was caused to suffer injury and resulting damages, for which he sues, including, but not limited to:

    (a) mental/emotional anguish, inconvenience, physical anxiety, physical pain and discomfort, physical ailments, loss of enjoyment of life, humiliation, and the like, past, and future.

    (b) back pay, front pay, loss of earnings and earning capacity, loss of employment, damage to his career and to his professional and personal reputation, and employment benefits, past and future.

111.    Defendants acted with malice or reckless indifference to the state-protected rights of Plaintiff, and Plaintiff seeks punitive damages for this outrageous conduct.

112.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' policies, practices, customs, and usages set forth herein, thus she requests declaratory and injunctive relief as a means of securing relief for such wrongs.

## E. DAMAGES

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

114.    By this reference, PLAINTIFF hereby incorporates all preceding paragraphs of this Petition as if they were set forth within this cause of action.

115.    PLAINTIFF has suffered injury and resulting damages, for which she is suing, as detailed herein in this PETITION.

116.    Additionally, PLAINTIFF asks for a declaration that his rights under Chapter 21 of the Texas Labor Code were violated;

    a.  Granting of a permanent injunction against Defendants, enjoining Defendants and their officers, successors, assigns and all persons in active concert or participation with it, from engaging in any further practice which discriminates against any employee on the basis of such employees race, age, and opposition to discrimination;

    b.  And any other relief the Court deems just and proper.

117.    Defendant acted with malice or reckless indifference to the state-protected rights of Plaintiff and Plaintiff seeks punitive damages for this outrageous conduct.

## G. DEMAND FOR JURY

118.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Original Petition and all succeeding paragraphs of this Original Petition, as if fully set forth herein.

119.    By this reference, PLAINTIFF hereby incorporates all preceding paragraphs of this Petition as if they were set forth within this cause of action.

120.    Plaintiff demands a jury trial at this time.

## H. PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff respectively prays that Defendants be cited to appear and answer herein, and that upon final hearing hereof, the Court grant Plaintiff the relief cited herein.

Respectfully submitted,
The Hanshew Law Firm, PLLC
**Soraya Yanar Hanshew, Esq.**
632 Moondale Dr.
El Paso, Texas  79912
syhlaw@outlook.com
(915) 491-6181 Telephone
(915) 996-9907 Facsimile

SORAYA YANAR HANSHEW
State Bar No. 24047151

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on OCTOBER 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Defendants including:

Defense counsel for El Paso COUNTY:

**JO ANNE BERNAL**
**EL PASO COUNTY ATTORNEY**
500 EAST SAN ANTONIO, RM. 503
EL PASO, TEXAS 79901
BUS: (915) 546-2050
FAX: (915) 546-2133
Email: Ian.Kaplan@epcounty.com

AND

Marisa Y. Ybarra - Williams
Email: mybarra-williams@raylaw.com
Rosa Sung
Email: rsung@raylaw.com
RAY | PEÑA |McCHRISTIAN
5822 Cromo Drive
El Paso, Texas 79912
Attorneys for Defendant El Paso MHMR d/b/a
Emergence Health Network

SORAYA YANAR HANSHEW, Esq.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 453-2022-01011 |

| **Texas Workforce Commission Civil Rights Division** | | | and EEOC |
|---|---|---|---|
| *State or local Agency, if any* | | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mrs. Doris C. Davis** | **915-494-6610** | **06/14/1971** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **11812 Daplin Way** | **El Paso, TX, 79934** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Emergence Health Network - MHMR** | **>500** | **915-887-3410** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **201 E. Main Suite 600** | **El Paso, TX, 79901** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |

☐ RACE    ☐ COLOR    ☒ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN          **09/20/2021**     **04/08/22**

☒ RETALIATION    ☐ AGE    ☒ DISABILITY    ☐ GENETIC INFORMATION

F M L A  ☒  OTHER *(Specify)*                    ☒  CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired and worked as the Training Manager for Emergence Health Network from April 22, 2021, to April 8, 2022. During my tenure with Emergence Health Network, I excelled and exceeded standards in terms of my job performance. I was never written up or disciplined during this employment. On or about September 23, 2021, I attended an office meeting where the CEO (Kristi Daughtery) addressed various employees, including myself. All upper division management was in attendance, including the Chief of Development–Rene Hurtado. During that meeting the CEO expressed herself in a terribly angry and aggressive manner, therein yelling at employees in an unprofessional, belittling, and degrading manner. She alleged we were "horrible" and "the worst division" in the agency. She further stated that all the previous HR's were equally as bad as we were and that she could not have a good relationship with any of them. She then pointed Georgina Hernandez (my colleague) out and said that she came from "the prior bad HR." She then stated "she got rid" of those people. She also pointed at Vanessa Garcia and April Martinez and stated that they too had been in the "bad HR." (Everyone she pointed out as being a part of the bad HR were Mexican Americans.) She then stated if "we don't like it" we could just leave. She went on to become very racially offensive. In a room full of Mexican American women, she stated that we all needed a "limpia" which insinuated that we were all dirty or had bad juju and needed a cleansing. This term when said to a Mexican American woman is very offensive and racially discriminatory, especially, when it comes from a Caucasian female. I was very offended and immediately told my supervisor, Georgina Hernandez, that I took great offense at this discrimination. Ms. Hernandez later reported it to the HR Director, Peter Fargo. At the end of the meeting, the CEO asked us if we had anything to say. One of our employees, Jessica Gurrola, shifted in her seat and the CEO aggressively yelled at her "what, do you have a question!" Jessica then quickly said "no." If any of us had a questions or said anything at that time it was clear the CEO would have yelled and degraded us in the same way. During this meeting the CEO also stated she was bringing in a consultant from UTEP as an HR instructor. We were told to "make ourselves available" and "answer all his questions." When Mr. Posthema came in, he interviewed us and had opinions on trainings we needed to complete. He stated over all, we were a good division. When his allegedly "highly valued opinion" wasn't what she wanted hear so she hired another consultant, Jan Chaplin. That consultant also did not believe we should be fired. Thereafter, the CEO informed us the NEO position (that I was performing) would now be done by new hire Luis Chavarria (male and under the age of 40). The CEO would then have private meetings with Chavarria constantly. In and around November 2021, Rene Hurtado told me that I needed to stop building all NEO items because Kristi (CEO) wanted Chavarria to handle them instead of me. Luis failed to handle them and Rene came back to me in December and told me to handle them a bit longer until Luis was ready to take them over. Luis was not aware of how to complete these duties. On or about December 16ʹ 2021 I was informed that Chavarria would be replacing me, by Chavarria himself. I was told moving forward I would be reporting to Chavarria and he would be subsuming my NEO and other training duties. I was then informed I would have to train him to replace me. Chavarria informed me the CEO indicated all training would be under Chavarria and they were only waiting on the CEO to decide how many more duties she was going to assign him before he started taking over my division. There was constant communication between the CEO and Chavarria regarding my termination and Chavarria's taking over my duties and position upon my being terminated. On or about January 4th, 2022 Rene and the CEO Kristi were walking through the HR offices

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

discussing the post construction set up. They walked in front of my office and Kristi asked Rene who is going to be in that office, (pointing to my office). They both knew I was in the office and could hear them because her whispered to the CEO "that's Doris's." She then said, "well you need to get rid of her and you'll have the last two offices available to work with." On or about February 3rd, 2022, Luis Chavarria stated that he had several meetings with Kristi and she told him to tell me that Chavarria would be taking over NEO and internal trainings from me. He informed me that I was now on his team and he was my superior. He said that his boss, Kristi, told him he could do whatever he wanted to do with training and that I was to support all his efforts. He also stated that he wanted me in all his NEO courses to watch him do the trainings. When I told him no I would not, I still had to manage the Relias system, collaborate and do audits he got angry and would come to my office to yell at me, berate me, and harass me. My report, Jessica Gurrola, was then removed from my supervision and moved to Chavarria shortly thereafter. Kristi then sent Rene Hurtado to inform me that she was demoting me, stripping me of my title, removing NEO and all of internal training duties from me and giving everything to my younger (under the age of 40) male coworker, Luis Chavarria. At that point, Luis Chavarria had 6 years of training experience by comparison to my 20 years of training experience. He also did not know any of the training standards, rules, regulations of the agency and had not represented the agency during audits and passed as I had. He was also not certified like I am. I believe I was demoted, harassed, humiliated, my duties and title were stripped due to my outcry opposing the CEO's discrimination in the workplace. During this time my son struggled with a terminal illness. Kristi did not permit me to take needed FMLA leave to take him to his infusion and doctor appointments and further discriminated and retaliated against me due to my son's terminal disability and medical condition. On or about February 28th, 2022 I advised Iris (head of HR) that I felt I was being discriminated and retaliated against and the CEO was clearly pushing me out and eliminating my position. Iris said she would try to help me, but did not. On or about March 8th, 2022 Iris came to speak to me to inform me my office (which I needed) was being taken from me and given to my replacement. Iris admitted knowing I needed the office space for collaboration meetings and trainings; however, proceeded to allow the CEO to strip me of my office. On or about March 21st 2022 Iris was walking Kristi through the HR offices in the morning (I had yet to leave my office at this point) and Kristi told Iris that I should be thrown to the floor and shouldn't be in any office. She then stated: "get rid of her if you want." Iris realized then that I was there and could hear them talking about me, she then said to me, "let's go back to my office to talk." On or about March 21st, 2022, after Kristi left Iris's office, Iris came to my office and told me that Kristi wanted me out of my office immediately. She wanted to give it to an employee that had only been there for 1 week at that point, and who also was younger than me (younger than 40 years of age). This employee already had an office space with another fellow HR employee with whom he worked on common projects with, thus he did not need my office. It was clear the stripping of my office was another retaliatory act by the CEO and my employer to punish me for opposing discrimination in the workplace. On March 24th 2022, around 3pm, Kristi came in yelling at Iris demanding my colleague Georgina Hernandez be terminated from her employment. Georgina Hernandez also opposed discrimination, was over the age of 40, is female and Mexican American. Thereafter, Georgina Hernandez was fired by the CEO and Iris. On or about Monday, March 30, 2022, 08:00 am, Maria Mireles from IT informed me my entire work set up was moved out of my office space. By the time I came in at 09:00am, my computer and screens were being moved out of my office space and I was told by Iris to move the rest of my stuff to a communal area. On or about April 6, 2022, at a PMAB training out of town, Luis stated that Kristi told him that he was taking over all my job duties ultimately and my only role now was to train him how to perform my job. He stated he would be changing several processes and procedures because Kristi, his boss, said he could do whatever he wanted with my training division. The hostile work environment, continual harassment, and retaliatory acts by my employer at this point caused me great stress which have resulted in lasting medical issues and emotional distress. I ultimately was constructively discharged from my employment as a result of the discrimination I opposed and the retaliation I suffered as a result of opposing discrimination. I was replaced by a male employee under the age of 40 with no dependents with disabilities. I believe that I have been discriminated against and subjected to a hostile work environment and retaliation because of my gender (female), my age (over the age of 40), and my association with a dependent with disabilities and a terminal illness. I was terminated from my employment in retaliation for reporting, opposing, and complaining about this discrimination as well as FMLA interference, all of which are in violation of Title VII of the Civil Rights Act of 1964, as amended, the Texas Labor Code, Ch. 21.051 and 21.055 (formerly the Texas Commission on Human Rights Act), as amended, and the ADA, Rehabilitation Act, 29 C.F.R. Part 1630 which precludes employers from imposing associational disability discrimination on employees with dependents suffering from illness and disabilities.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 06/08/2022<br>*Date*    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>June, 08 2022 |

SABRINA CHIN
My Notary ID # 133701243
Expires April 12, 2026

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.   FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.   AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.   PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.   ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**El Paso Area Office**
100 N. Stanton Street, Suite 600
El Paso, TX  79901
(800) 669-4000
Website:  www.eeoc.gov

## EXHIBIT "B"

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 03/16/2023

**To:** Doris Davis
11812 Daplin Way
El Paso, TX 79934

Charge No: 453-2022-01011

EEOC Representative and email:     Jessie Moreno
Senior Investigator
jessie.moreno@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 453-2022-01011.

On behalf of the Commission,

Digitally Signed By: Travis M. Nicholson
03/16/2023

Travis M. Nicholson
District Director

**Cc:**
Michael R Wyatt
EHN
201 E. Main Dr., Ste. 600
El Paso, TX 79901

Iris Sandoval
201 E. Main St., Suite 600
El Paso, TX 79901

Soraya Yanar Hanshew
632 Moondale Dr.
El Paso, TX 79912

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 453-2022-01011 to the District Director at Travis M. Nicholson, 207 S. Houston St., 3rd Floor, Dallas, TX 75202.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT "C"

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | SECOND AMENDMENT TO |
| COUNTY OF EL PASO | § | INTERLOCAL AGREEMENT |

THIS SECOND AMENDMENT TO INTERLOCAL AGREEMENT is entered into on the last date written below by and between the COUNTY OF EL PASO (hereinafter referred to as the "County") and the EL PASO COUNTY HOSPITAL DISTRICT (hereinafter referred to as "the Hospital District") collectively to be known as the "sponsoring agencies".

WITNESSETH:

WHEREAS, the County, the City of El Paso, and the Hospital District established a community mental health and mental retardation center in 2001 in accordance with the authority granted by Texas Health & Safety Code, Chapter 534; and

WHEREAS, the City of El Paso has withdrawn its participation in the governance and operation of the community mental health and mental retardation center so established in 2001 by termination of its participation in the 2001 interlocal agreement by the execution of the First Amendment to Interlocal Agreement by the parties; and

WHEREAS, said undersigned agencies desire to amend the Interlocal Agreement in its entirety to insure the continued existence and operation of the community mental health and mental retardation center, to deal with the withdrawal of the City of El Paso from the Interlocal, reduce the number of trustees, establish new procedures for the selection of trustees for the Board of Trustees as provided by Section 534.003(c), Texas Health and Safety Code, and make new provisions for the removal of trustees; and

WHEREAS, the making of this amendment shall not constitute a termination or dissolution of the community center created in 2001; and

WHEREAS, all of the sponsoring agencies that have signed this Agreement continue to

KK-10-544

agree that local contributions are necessary to maintain the community mental health and mental retardation center.

NOW THEREFORE, be it known that the County and the Hospital District enter into this Second Amendment to Interlocal Agreement to amend and replace the 2001 Interlocal Agreement by and between the City of El Paso, the County, and the Hospital District.

I.
Establishment of Community Center

The County and the Hospital District hereby mutually acknowledge the establishment of the community mental health and mental retardation center in 2001, which provides mental health and mental retardation services, and is named El Paso Mental Health and Mental Retardation (El Paso MHMR).

II
Board of Trustees

El Paso Mental Health and Mental Retardation shall be administered by a Board of Trustees. The Board of Trustees, hereinafter "the Board" shall consist of seven (7) persons appointed pursuant to this Agreement by the County and the Hospital District, from among the members of the governing bodies of the sponsoring agencies or from among the qualified voters of El Paso County. Each entity will be entitled to three appointments to the seven-member board. The seventh member will be jointly nominated by the County Judge and the Chair of the Hospital District Board of Managers. Said nominee must be approved by the governing bodies of the County and the Hospital District to be effective.

The term of office of a trustee shall be two years except for the appointments made in the transition year of this agreement. The terms shall be staggered so that complete turnover on the

Board of Trustees does not occur. Each trustee's term will begin on January 1 of the year of appointment and end on December 31st of the year the term ends. A trustee who's term expires, but who has not yet been replaced, shall continue to serve as a trustee until replaced.

### A.    Appointment

The regular appointment of trustees by the sponsoring agencies shall occur during the month of December before each year when appropriate vacancies occur by expiration of a term. The appointment for the fulfillment of an unexpired term will occur within a reasonable time after any vacancy has occurred but in no event later than 60 days after the board has given a notice of a vacancy to the appointing sponsoring agency.

### B.    Transition Year

The sponsoring entities shall make their new board appointments as soon as possible after the effective date of this agreement. The terms of office for all trustees in office on the existing nine-member board on the effective date of this agreement shall terminate on the 1st day of March, 2011. Each sponsoring agency shall designate one of their new appointees to serve until December 31, 2012, and the nominee of the County Judge and Chair of the Hospital District Board shall serve until December 31, 2012. All other new appointees shall serve until December 31, 2013.

### C.    Notice and Filling of Vacancies

1)    Upon the anticipated expiration of a term or in the event of a vacancy, the Board shall notify the chief executive officer of the appropriate appointing sponsoring agency, or the County Judge and the Chair of the Hospital District Board of Managers if the terminating trustee was nominated by them, of the pending vacancy.

2)    The appointing agencies shall post the notice of vacancy to solicit applications from interested qualified individuals on their websites. Such notice shall direct the applicants to forward their application to the office of the chief executive officer of the appointing agency by a deadline set in the notice. The sponsoring entities may also send a press release to the media advising the public of the vacancy.

3)    Interested persons shall complete a form to be approved by each sponsoring entity for its own use to be entitled "Application for El Paso Mental Health and Mental Retardation Board of Trustees Appointment" and submit it to the office of the chief executive officer of the appointing sponsoring agency.

4)    An appointment must be made by the appropriate sponsoring agency by January 1 for a position beginning its new term or within 60 days after notice of a vacancy for an unexpired term.

5)    No trustee can serve more than three (3) consecutive full two-year terms. A vacancy on the Board of Trustees is filled by appointment for the remainder of the unexpired term.  It is understood that if an individual is appointed to fill a vacancy in an unexpired term, the person could be re-appointed to serve three (3) full terms in addition to the period of the unexpired term.

6)    Each trustee appointed must sign and file any required oath of office with the sponsoring agency prior to the beginning of the trustee's tenure and fulfill all requirements mandated by law and the bylaws of El Paso Mental Health and Mental Retardation including the training required by Section 534.006 of the Texas Health and Safety Code.  Additionally, not later than the date on which a member of the board of trustees takes office and not later than the anniversary of that date, each member shall annually execute and file with El Paso MHMR an affidavit acknowledging that the member has read the requirements for qualification, conflict of interest, and removal as required by Chapter 534 of the Texas Health and Safety Code.

**D.    Criteria for Selection**

Each sponsoring agency shall develop criteria for selection of Board of Trustee members so as to fairly analyze the interests, abilities, character and professionalism of the applicant. Board appointments must reflect the ethnic and geographical diversity of the service area.  As stated above, members of the governing bodies of the sponsoring agencies may be appointed to the Board. Additionally, at least one appointee of each sponsoring agency shall have expertise in areas such as education, administration, fiscal management, healthcare, medicine or law.   The qualifications of the remaining appointees will be left to the discretion of each sponsoring agency.  The appointee jointly nominated by the County Judge and the Chair of the Hospital District Board of Managers must be a consumer or family member of a consumer of the types of services offered by the community center, but shall not receive those services from El Paso MHMR.

Under no circumstances shall any person be eligible to be appointed to the Board who owns or controls or whose spouse owns or controls, directly or indirectly, more than a 10% interest in a business entity or organization receiving funds from the community mental health and mental retardation center by contract or other method. Nor shall any person be eligible to be appointed to the Board of Trustees who works for or is affiliated with, or whose spouse works for or is affiliated with, any organization that receives tangible goods or funds from El Paso MHMR, or the person or their spouse uses or receives tangible goods or funds from El Paso MHMR.  Reimbursements authorized by law for Board membership, attendance, or expenses are expressly excepted from this prohibition.

KK-10-544

**E.    Removal of a Member from the Board of Trustees**

1.    <u>Removal by the Board:</u>

(a)    A trustee <u>shall</u> be removed from the Board by majority vote of the Board of Trustees as then legally constituted and serving for the following reasons:

(1) The loss of residency in El Paso County, Texas, or the trustee's status as a qualified voter of El Paso County, Texas.

(2) Conviction of any offense classified as a felony, or a misdemeanor offense involving moral turpitude, or violation of any of the Rules of the Texas Department of State Health Services.

(3) Failure to divest him or herself from a conflicting interest as described in section D within a reasonable time after its discovery.

(4) For any of the reasons outlined under § 534.0065 of the Texas Health & Safety Code.

(b)    A trustee <u>may</u> be removed from the Board by a 2/3 majority vote of the Board, as then legally constituted and serving, for the following reasons:

(1)  Failure to maintain an acceptable standard of attendance at meetings, as determined  by the Board of Trustees.

(2)  Violation of any by-laws adopted by the Board of Trustees.

(c)    A member subject to removal shall have a right to have an open hearing before the Board of Trustees if he so desires.  The sponsoring agency that initially appointed the individual removed by the Board may not reverse the decision of the Board.

2.  <u>Removal by the Appointing Sponsoring Agency:</u>

Should the Board of Trustees fail to remove a member of the Board pursuant to Section (E)(1)(a) above, the member may be removed by the appointing sponsoring agency.  In this instance, the member subject to removal shall have a right to have an open hearing before the sponsoring agency if he so desires.  A sponsoring entity may also remove, without cause, its appointed trustee who is a member of the governing body upon vacation from office with the governing body by the trustee.


**F.**  The Board of Trustees shall adopt bylaws that set forth procedures to assure that the Board timely and expediently accomplishes all tasks in accordance with this Section.

KK-10-544

III.
Powers and Duties

El Paso Mental Health and Mental Retardation shall have the responsibility and duty to ensure a continuum of comprehensive mental health and mental retardation services in El Paso County. El Paso MHMR shall have all the powers, duties, responsibilities and authority of a community mental health and mental retardation center under state law. The Board of Trustees shall be responsible for the administration of El Paso MHMR. The Board of Trustees shall adopt bylaws for the operation of the Board and El Paso MHMR consistent with state law and this agreement. The Board of Trustees may adopt a new public name or names for El Paso MHMR or the program it operates. Except as otherwise specified in this Agreement, El Paso MHMR and the Board of Trustees shall exist as a separate body politic, agency of the state and unit of government; autonomous and independent of the County and the Hospital District pursuant to Texas Health & Safety Code § 534.001(c)

The Board of Trustees meetings shall be open to the public and in accordance with Chapter 551 of the Texas Government Code. The Board of Trustees shall send to each sponsoring agency a copy of the approved Minutes of each Board meeting.

IV.
Budget and Funding

The County and the Hospital District shall make contributions, which have an ascertainable market value, to El Paso Mental Health and Mental Retardation in accordance with and during their respective fiscal years, and in accordance with their accounting and budget procedures and this agreement. Each sponsoring agency shall contribute not less than $100,000 per fiscal year. Each agency may contribute land, buildings, facilities, services, personal

KK-10-544

property, personnel, and funds to El Paso MHMR in satisfaction of this Agreement. All contracts for services or for the use of land, buildings, facilities or personal property must be directly with El Paso MHMR for a sponsoring agency to receive credit towards its annual contribution amount, and such contract shall specifically provide for the agreed-upon value of the services or uses provided.

Within thirty days after each sponsoring entity adopts its budget for each fiscal year during the term of this Agreement, each sponsoring agency shall provide written notice to the other sponsoring entities and to El Paso MHMR detailing the nature and extent of its intended contribution to El Paso MHMR for the fiscal year.

V.
Independent Audit

The Board shall enlist an independent certified public accountant to perform an annual audit and prepare certified financial statements that shall be presented to the Board and the sponsoring agencies within thirty days of completion of the audit. The fiscal year of El Paso MHMR shall be from September 1 through August 31.

VI.
Period of Contract

This agreement shall become effective when signed by all parties and shall continue in effect until dissolved and terminated by either party. A party wishing to effectuate a termination of its participation under this contract must give 90 days written notice to the other parties and the Texas Department of State Health Services. On the effective date of the termination, that party's appointees to the Board of Trustees shall be removed from the Board. The remaining party may continue operation of El Paso MHMR pursuant to Texas Health and

KK-10-544

Safety Code, Sections 534.001 and 534.002.

VII
Compliance with Law

El Paso Mental Health and Mental Retardation shall comply with all applicable rules and regulations of the Texas Department of State Health Services, federal and state statutes, and the ordinances of the City of El Paso.

VIII.
Records and Reports

El Paso Mental Health and Mental Retardation shall present to each sponsoring agency records and a report relating to its operation and budget on a semi-annual basis at a posted meeting of each sponsoring agency.

In addition, El Paso MHMR shall furnish to the sponsoring agencies by December 31st of each year during the term of this Agreement a report analyzing the effectiveness of joint administration of mental health services and mental retardation services under one community center as created pursuant to this agreement.  If a need is shown to separate the joint administration of these services, the sponsoring agencies may jointly consider separating the mental health and mental retardation services.

The County and the Hospital District shall, for the purpose of audit and examination, be permitted to inspect all work, materials, payrolls, and other data and records of El Paso MHMR during normal business hours and in a reasonable manner.

KK-10-544

IX.
Visits

Representatives from the sponsoring agencies may visit any of El Paso MHMR's facilities at any time, provided that the visit complies with federal and/or state healthcare and privacy laws, regulations, or requirements.

X
No Employer-Employee Relationship Created

Nothing contained herein shall be construed as creating the relationship of employer and employee between the County or the Hospital District and El Paso Mental Health and Mental Retardation, its officers, agents, servants or employees.

XI.
Law Governing Contract –Venue

For the purpose of determining place of contract and the law governing same, this contract is entered into in the City and County of El Paso, State of Texas, and shall be governed by the laws of the State of Texas.  Venue for any cause of action related to this contract shall be in El Paso County, State of Texas.

XII.
Severability Clause

If any word, phrase, clause, paragraph, sentence, part or provision of this agreement or the application thereof to any person or circumstance shall be held to be invalid or unconstitutional, the remainder of the agreement shall nevertheless be valid.

KK-10-544

XIII.
Entire Agreement

This contract constitutes and expresses the entire agreement between the parties; it supersedes any prior agreement relating to the operation of El Paso Mental Health and Mental Retardation, and shall not be amended or modified except by written instrument signed by all parties.


IN WITNESS WHEREOF, the County of El Paso and the El Paso County Hospital District have executed this contract as of the date last written below.


ATTEST:                                   THE COUNTY OF EL PASO

_____            By_____
County Clerk                              County Judge Veronica Escobar
                                          Date: January 24, 2011


ATTEST:                                   EL PASO COUNTY HOSPITAL DISTRICT

_____            By_____
Secretary                                 Dr. Jose Luna
                                          Chair
                                          Hospital District Board of Managers
                                          Date:_____2/21/11_____

Approved as to form:

_____
Assistant County Attorney


Approved as to form:

_____
Chief Legal Officer
El Paso County Hospital District

KK-10-544

**EXHIBIT D**

FILED FOR RECORD
IN MY OFFICE

2023 SEP 22 PM 3:58

DELIA BRIONES
COUNTY CLERK
EL PASO COUNTY, TEXAS

**PUBLIC NOTICE-AGENDA**
**MEETING OF THE EMERGENCE HEALTH NETWORK BOARD OF TRUSTEES**
**Thursday, September 28, 2023, at 3:30 p.m.**
**EHN Board Room - 201 East Main Street, Suite 600, El Paso, Texas 79901**
**Teleconference line: 1-888-510-2207 Access code: 011-488-873**
*Note teleconference line available*

1. **Introductory Items**
   A. Call to order and certification of a quorum
   B. Citizens' comment
   C. Employee recognitions

2. **Consent Agenda**
   *NOTICE TO THE PUBLIC: All matters listed under the Consent Agenda will be considered by the Board of Trustees to be routine and will be enacted by one motion in the form listed below. There will be no separate discussion of these items unless Trustees or persons in the audience request that specific items be removed from the Consent Agenda to the Regular Agenda for discussion prior to the time the Board of Trustees votes on the motion to adopt the Consent Agenda. All matters listed on the Consent Agenda and the Regular Agenda may be discussed in executive session at the option of the Board and following verbal announcement, if an appropriate exception to the open meeting requirement of the Texas Open Meetings Act is applicable.*

   A. Approve the Board of Trustees meeting minutes held on August 24, 2023 (reviewed by Executive Committee)
   B. Adopt the Chief Financial Officer's report on EHN financials (reviewed by Finance Committee)
   C. Adopt the Community Collaboration Report (reviewed by PNAC Committee)
   D. Approve and authorize FY2024 Texas Council Membership Dues (reviewed by Finance Committee)
   E. Approve and authorize Conterra Networks agreement for internet services (reviewed by Finance Committee)
   F. Approve and authorize Netsmart Bells AI agreement (reviewed by Finance Committee)
   G. Approve and authorize Doxy.me renewal agreement (reviewed by Finance Committee)
   H. Approve and authorize ratification of HHSC LMHA Interlocal Cooperation Performance Contract (reviewed by Executive Committee)

3. **Reports and Presentations**
   A. Receive CEO report regarding current EHN operations

4. **Regular Agenda**
   A. Discuss and take appropriate action regarding interlocal agreement with Socorro Independent School District for operation of a school-based Crisis Intervention Team (reviewed by Executive Committee)
   B. Discuss and take appropriate action regarding EHN's FY2023 Strategic Plan (reviewed by All Committees)
   C. Discuss and take appropriate action regarding EHN's FY2024-FY2026 Strategic Plan (reviewed by Executive Committee)
   D. Discuss and take appropriate action regarding EHN's FY2024 Strategic Plan (reviewed by All Committees)

5. **Executive Session** – *The Board may retire into closed session pursuant to Tx. Gov't Code Ch. 551 for the following:*
   A. Consultation with attorney regarding legal claim filed against EHN under TWC charge number 31C-2022-01015, pursuant to Tex. Govt Code sec. 551.071
   B. Consultation with attorney regarding litigation filed against EHN under case number 2023-DCV-1916, pursuant to Tex. Govt Code sec. 551.071
   C. Consultation with attorney regarding litigation filed against EHN under case number 2023-DCV-1932, pursuant to Tex. Govt Code sec. 551.071
   D. Review and discuss CEO Evaluation and Compensation, pursuant to Tex. Govt Code section 551.074(a)(1)
   E. Discuss inmate mental health services interlocal with University Medical Center with legal counsel pursuant to Tex. Govt Code sec. 551.071(2)
   F. Discuss Legal services interlocal with the El Paso County Attorney's Office

Persons with disabilities who plan to attend these meetings and who may need auxiliary aids or services (such as readers, large print, Braille, or interpreters for persons who are deaf or hearing impaired) are requested to contact the executive assistant to the EHN Board (915)887-3410 Ext. 18807 or tbeltran@ehnelpaso.org) 48 hours prior to the meeting so that appropriate arrangements can be made.

**6.** **<u>Open Session</u>**

    **A.** Discuss and take appropriate action regarding legal claim filed against EHN under TWC charge number 31C-2022-01015, pursuant to Tex. Govt Code sec. 551.071.

    **B.** Discuss and take appropriate action regarding litigation filed against EHN under case number 2023-DCV-1916, pursuant to Tex. Govt Code sec. 551.071.

    **C.** Discuss and take appropriate action regarding litigation filed against EHN under case number 2023-DCV-1932, pursuant to Tex. Govt Code sec. 551.071.

    **D.** Discuss and take appropriate action regarding CEO evaluation and compensation

    **E.** Discuss and take appropriate action regarding inmate mental health services interlocal with University Medical Center

    **F.** Discuss and take appropriate action regarding Legal services interlocal with El Paso County Attorney's Office

**7.** **<u>Adjournment</u>**

This meeting may include one or more Trustees who will participate by videoconference, and EHN employees who will participate by videoconference, pursuant to Texas Government Code Section 551.127. A quorum of the EHN Board of Trustees will be physically present at the EHN Board Conference Room, 201 East Main Street, 6th Floor, El Paso, Texas 79901. A Trustee who is presiding over the meeting will also be physically present at the location listed above. The meeting is open to the public during the open portions of the meeting, and any Trustee participating by video conference shall be visible and audible to the public for as long as such Trustee participates.

Persons with disabilities who plan to attend these meetings and who may need auxiliary aids or services (such as readers, large print, Braille, or interpreters for persons who are deaf or hearing impaired) are requested to contact the executive assistant to the EHN Board (915)887-3410 Ext. 18807 or tbeltran@ehnelpaso.org) 48 hours prior to the meeting so that appropriate arrangements can be made.